[No. 11550.    In Bank.—December 22, 1887.]

C. R. CALLENDER, RESPONDENT, v. A. C. McLEOD, APPELLANT.

SALE — WANT OF POSSESSION — ATTACHING CREDITORS OF VENDOR — LEASE ON SHARES — GROWING CROP. — The plaintiff, being the owner of a tract of land, leased the same in 1883 to one Armfield, on shares, to be cultivated in wheat. Subsequently, in the same year, the parties agreed that the plaintiff should furnish Armfield one hundred sacks of seed wheat, in consideration of which Armfield promised to return for it two sacks for one, out of the next season's crop. In pursuance of this agreement, the plaintiff furnished the one hundred sacks. In 1884 Armfield's crop was light, and he being desirous of retaining the two hundred sacks until 1885, the plaintiff told him to keep them on the same terms, and subsequently furnished him with forty-eight sacks more. In 1885 the parties agreed that the plaintiff was entitled to receive 496 sacks on account of those that he had furnished for seed, and that Armfield, after harvesting and sacking his crop, should haul the sacks going to the plaintiff to a neighboring town and deliver them to him there. Armfield thrashed and sacked his crop, and piled the sacks, including those going to the plaintiff, in one pile on the leased ground. The sacks as piled were not segregated, and had no distinguishing marks upon them. While there the entire pile was attached as the property of Armfield. *Held*, that as to the 496 sacks the plaintiff was to be treated as a purchaser, and not as a tenant in common of a growing crop, and that not having taken them into his possession, the transfer was void as against the attaching creditors of his vendor.

APPEAL from a judgment of the Superior Court of San Luis Obispo County, and from an order refusing a new trial.

The facts are stated in the opinion.

*McD. R. Venable*, and *C. W. Goodchild*, for Appellant.

*R. B. Treat*, and *Sumner & Moses*, for Respondent.

BELCHER, C. C.—This action was brought to recover damages for the alleged conversion of 496 sacks of wheat taken by defendant as sheriff, under a writ of attachment against one J. H. Armfield. The court found that the plaintiff was the owner and in possession of the wheat when it was taken, and rendered judgment in his favor. The defendant moved for a new trial, and his motion being denied, appealed from the judgment and order.

It is claimed for the appellant that the findings were not justified by the evidence, and in our opinion this claim must be sustained. The facts, as they are shown by the record, are substantially as follows: Some time in the year 1883 the plaintiff leased to Armfield, on shares, a piece of land in San Luis Obispo County, to be cultivated in wheat. Later, in the fall of that year, Armfield told the plaintiff that for want of seed he would have to give up the lease, and thereupon the parties agreed that the plaintiff should furnish 100 sacks of seed, and that Armfield should return for it two sacks for one, out of the next season's crop. In 1884 Armfield's crop was light, and he wished to retain the 200 sacks until 1885. Plaintiff told him to keep them "on the same lay," and then furnished him 48 sacks more. When Armfield had finished heading his crop in 1885, it turned out that there was some misunderstanding between the parties as to how many sacks plaintiff was entitled to receive. He claimed two for one for the

200 sacks and 48 sacks, furnished as aforesaid; and, after some conversation, it was agreed that he was entitled to receive the number claimed. It was then further agreed that Armfield, after thrashing and sacking his crop, should haul the 496 sacks going to plaintiff to San Luis Obispo, and deliver them to him there. Armfield thrashed and sacked his crop, and piled his sacks up in a small corral on the leased ground. Shortly thereafter the defendant, as sheriff of the county, under a writ of attachment duly issued against Armfield, levied upon and took into his possession the whole pile. After the attachment, the plaintiff demanded and received from the defendant the number of sacks which he was entitled to claim as rent, and Armfield demanded and received the number which he was entitled to hold as exempt from execution. The plaintiff then demanded that 496 sacks more be given up to him, and his demand being refused, commenced this action.

. The plaintiff, as a witness in his own behalf, testified: "All the grain was piled up together,—Armfield's, the seed, and the rent part in one pile. I got all my rent grain. . . . . When I said that I knew and owned the 496 sacks of wheat, I meant that 496 out of the pile of sacks of wheat were mine. There were no marks to distinguish the 496 sacks from the other sacks in the pile. I never handled it myself. The only thing I ever did to take possession was to tell Armfield to pile it together with his grain, and haul it into town. He was to haul and deliver to me, in San Luis Obispo, 496 sacks out of the general crop. I do not know what he was going to do with his part of it. The 496 sacks claimed in this action were never in any way separated from Armfield's grain. It was kept together in a general pile. It was never marked in any manner, and I never knew which sacks out of the general pile were mine. Any 496 sacks out of the general pile would have answered the purpose. There was no segregation between the several sacks. They were

the same sized sacks. All that was ever done with this grain as to hauling and handling was done by Armfield and his men. I never had anything to do with it except through Armfield."

Armfield was a witness for plaintiff, and testified in reference to the 496 sacks as follows: "Callender became the owner in this way: He furnished me seed, and I was to pay him back. . . . . After the grain was thrashed I hauled it and piled it all in the small corral, but I had straw laid between Callender's grain and mine, and could distinguish between them. . . . . It was in my care, in accordance with directions. Mine was piled back next to the straw pile and his in front, because I intended to haul his first. There were no marks on the sacks, for I usually marked it as I hauled it. I afterwards took out of the same pile 118 sacks allowed me as exempt. The keeper gave me part of them from the front side of the pile and part from the other. Callender had nothing to do with the grain. I told him there were so many sacks, and he told me to pile it up and take care of it."

Upon these facts, it seems clear to us that the plaintiff was not the owner and in possession of the 496 sacks of wheat in controversy, when they were attached and taken into his possession by the defendant. Whether, by reason of the fact that Armfield was farming on shares, plaintiff owned, as a tenant in common with him, that part of the crop which he was to receive as rent, it is not necessary to inquire. The 496 sacks were not rent, but were to be returned to plaintiff for the loan made by him in 1883 and 1884, and as to them he must be treated as a purchaser, and not as a tenant in common of a growing crop. (Civ. Code, secs. 1727, 1806.) Now, treating the plaintiff as a purchaser of the wheat, it is evident that he had acquired no right to it which he could successfully assert as against an attaching creditor of Armfield. (Civ. Code, sec. 3440.)

It follows that the judgment and order should be reversed, and the cause remanded for a new trial.

FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

HAYNE, C., dissenting.—The case is, perhaps, a close one; but I do not think the case is one of exchange, as supposed by my associates. There was nothing in existence to exchange for the seed wheat. It was expressly agreed that the plaintiff was to take two sacks for one out of the crop, and that as no crop was produced, he was to get nothing. If that contingency happened,—that is to say, if no crop was produced,—how could there be an exchange? By the first agreement the parties were tenants in common of the crop. (*Bernal* v. *Hovious*, 17 Cal. 542; 79 Am. Dec. 147; *Knox* v. *Marshall*, 19 Cal. 617.) This was conceded on all hands, and on this theory, the share of plaintiff under his first agreement was delivered up to him. Now, the second agreement was simply to increase this share. I cannot see anything in the circumstances to indicate that the share coming to plaintiff in return for the seed wheat was to be of a different *status* from the share coming to him for the use of his land. It seems to me that the judgment was right, and should be affirmed.

PATERSON, J., McFARLAND, J., and THORNTON, J., concurred in the opinion of Commissioner Hayne.

Rehearing denied.