[Civ. No. 1025.　Third Appellate District.—December 12, 1912.]

## MARY CENTER, Respondent, v. E. A. KELTON, as Sheriff of the County of Napa, Appellant.

Sales — Cows and Grain — Attachment — Replevin — Question of Fraud—Defense—Want of "Actual and Continued Change of Possession."—In an action of replevin, involving the title to cows and grain sold to the plaintiff, and attached as the property of plaintiff's vendor, it is held that the defense of the attaching creditor, based on the question of fraud in the sales, and pleading that the alleged sales of the cows and grain were not accompanied by an "immediate delivery and an actual and continued change of possession" by the vendor of the plaintiff, as required by section 3440 of the Civil Code, to protect the same from the reach of the creditors of the vendor, is tenable, under the proofs in the case.

Id.—Object of Statute—Substantial Observance Required.—Care should be taken to keep in view the object of the statute which is to require notice to the world of the transfer of personal property, in order that creditors may be justly protected; and nothing less than a substantial observance of its salutary provisions should be required.

Id.—Rule of Statute not to be Relaxed—Honesty of Sale or Hardship No Ground for Disregarding Statute.—The rule prescribed by the statute is not to be relaxed by judicial interpretation. However honest the sale may be, and whatever hardship may be inflicted upon the vendor, this furnishes no reason for disregarding the plain provisions of the statute, or setting at naught its whole sane and salutary rule for the preservation of personal honesty and commercial security.

Id.—Other Alleged Purchases not Concluded Fraudulent.—It is held that other alleged purchases, than the cows and grain, stand upon a somewhat different footing, and that while they present a debatable question, the appellate court is not prepared to say that the evidence compels the conclusion that they were fraudulent.

Id.—Argument of Case Tried by Court—Discretion of Judge—Better Practice.—Though there is no statutory rule requiring the argument of a case tried by the court, and there is reason for leaving the matter to the wise discretion of the judge; yet, where there is room for argument, it would be the better practice to permit it.

APPEAL from a judgment of the Superior Court of Napa County. H. C. Gesford, Judge.

The facts are stated in the opinion of the court.

C. N. Riggins, for Appellant.

Edward S. Bell, for Respondent.

BURNETT, J.—The action was in replevin for one mare, one stallion, two cows, two yearlings, three calves, fifty sacks of wheat, eight sacks of barley, five sacks of oats, and eight sacks of bran. Defendant denied the ownership of plaintiff and justified the taking under a writ of attachment against the property of one Richard Fealy, and he alleged in his answer that plaintiff had replevined the property from him in this action, and he therefore demanded its return or its value in money. The value of the property is shown by the pleadings to be the sum of five hundred dollars. Plaintiff claimed to have acquired it from Fealy in several lots at intervals covering about seventeen months and there is nothing to indicate the separate value of the several portions. The dates of the alleged sales are as follows: January 20, 1910, two calves; May 28, 1910, mare and stallion; September 26, 1910, wheat and barley; January 23, 1911, one calf; June 5, 1911, two cows. It does not appear clearly just when the oats and bran were purchased but it is a fair inference that it was about the same time as the wheat and barley.

The defense is based on section 3440 of the Civil Code and it is insisted by appellant that there was no "immediate delivery" or "actual and continued change of possession," which the law exacts to protect the property from the reach of the creditors of the vendor.

Richard Fealy married the plaintiff's daughter, June 12, 1910. Mrs. Center had a small farm and house in St. Helena where she and her daughter had been living since April, 1909, and after his marriage Fealy came to the place, took charge of the work and has lived there ever since. He leased the property from plaintiff and she has continued to occupy the dwelling-house with him and his wife and Mrs. Fealey's two boys and plaintiff's brother, a helpless old man. The plaintiff has had nothing to do with the farming or with the management of the place. Fealy fed the animals that he used and paid for their feed if he was using them. Plaintiff

does not know what cows he milked but those that could not be milked were put in pasture. The two cows plaintiff claims to have purchased on June 5 had been bought by Fealy and kept on this place for about a week before this date. They were soon after taken by him to pasture. Fealy drove the stock to pasture and made all the arrangements. Mrs. Center never saw the animals after they left her place. The two cows were driven to the Moses Stice place and Fealy said nothing about them being the property of Mrs. Center, and they remained there until attached. There is no evidence of public notice that plaintiff claimed any interest in the cows until after the attachment. As is apparent from the foregoing recital of facts, they were cared for and treated by Fealy as his own property and there was no "open, visible change, manifested by such outward signs as render it evident that the possession of the vendor had wholly ceased." (*Cahoon* v. *Marshall*, 25 Cal. 201.)

Fealy bought the wheat and barley, had it hauled to the farm and kept it there for sale. Plaintiff purchased it from him, moved it from the lower to the upper floor in the barn and fed some to her poultry. A few days before the attachment the man who was moving the barn took the grain out and piled it in the yard where it was when levied upon. The evidence is meager as to the bran and oats, but the manner in which plaintiff testified concerning them in connection with the wheat gives rise to the inference that she purchased said bran and oats from Fealy. None of the grain or feed was marked or designated in any way and all of it was found by the sheriff on the place where Fealy was living and which he held under lease.

Applying the doctrine of the decisions to the foregoing facts, there would seem to be no escape from the conclusion that we have a case for the application of said section 3440 of the Civil Code. The question involved has been many times the subject of careful consideration from the appellate courts. It is sufficient to refer to the following decisions: *Stevens* v. *Irwin*, 15 Cal. 503, [76 Am. Dec. 500]; *Woods* v. *Bugbey,* 29 Cal. 473; *Callender* v. *McLeod,* 74 Cal. 376, [16 Pac. 473]; *Ruddle* v. *Givens,* 76 Cal. 457, [18 Pac. 421]; *Murphy* v. *Mulgrew,* 102 Cal. 547, [41 Am. St. Rep. 200, 36 Pac. 857]; *George* v. *Pierce,* 123 Cal. 172, [55 Pac. 775,

56 Pac. 53] ; *Sequeira* v. *Collins,* 153 Cal. 426, [95 Pac. 876], and *Guthrie* v. *Carney,* 19 Cal. App. 144, [124 Pac. 1045].

There is no dissent from the principles stated in one of the opinions that "The vendor cannot be allowed to remain in the apparent sole and exclusive possession of the goods after the sale, for that would be inconsistent with such an open and notorious delivery and actual change as the statute exacts in order to exclude from the transfer the idea of fraud. Care should be taken in such cases to keep in view the object of the statute, and to exact nothing less than a substantial observance of its salutary provisions." Of course, the object of the statute is to require notice to the world of the transfer of personal property in order that creditors may be justly protected. It is easy enough, as it is, for designing debtors to place their property beyond the reach of honest debts, and the rule prescribed by the statute should not be relaxed by judicial interpretation. It may be said, also, that the statute does not impose any great hardship upon the parties in case of a transfer made in good faith. Ordinarily there should be little difficulty in affecting an "immediate delivery" and an "actual and continuous change of possession." But, however honest the sale may be, and whatever hardship may be inflicted upon the vendee, this furnishes no sufficient reason for disregarding the plain provisions of the statute or setting at naught a wholesome and salutary rule for the promotion of personal honesty and commercial security. (*Brown* v. *O'Neal,* 95 Cal. 267, [29 Am. St. Rep. 111, 30 Pac. 538].)

As suggested by appellant, the circumstances attending the sale of the cows can be aptly compared with the facts revealed in *Ruddle* v. *Givens,* 76 Cal. 457, [18 Pac. 421] ; *Murphy* v. *Mulgrew,* 102 Cal. 547, [41 Am. St. Rep. 200, 36 Pac. 857], and *George* v. *Pierce,* 123 Cal. 172, [55 Pac. 775, 56 Pac. 53], while the facts in *Callender* v. *McLeod,* 74 Cal. 376, [16 Pac. 194], are somewhat analogous to those here in reference to the grain. It may be said, indeed, that, in several of the cases wherein the court held that the attempted transfer was void, the evidence in favor of the vendee was stronger and more persuasive than in the case at bar as to the particulars aforesaid.

The other alleged purchases stand upon a somewhat different footing, and, while they present a debatable question,

we are not prepared to say that the evidence compels the con-
clusion that they were fraudulent.

Appellant complains because he was not permitted to argue
the case at the conclusion of the testimony.   The record shows
the following indorsement made by the learned trial judge:
"At the close of the case counsel for defendant asked leave to
argue the case, but the court believing plaintiff had made
out a complete case against defendant, denied the request."
It is admitted by appellant that the extent to which a trial
court may go in declining to hear arguments is undefined
but it is insisted that "Where a conflict in evidence presents
itself on which his decision will be final, it would seem to
be his duty not only to the litigants, but to that high sense
of his responsibiliy as the exponent and representative of
justice which should animate the breast of every judge, to
hear and consider with unbiased mind whatever may be
fairly presented by each of the parties and to obey the spirit
of that admonition to trial juries in like position, neither
to express nor form an opinion in the case until it is finally
submitted."   There is manifestly a distinction between a
case where an issue is submitted to a jury and where it is
to be determined by the trial judge.   In the former, if the
question is debatable, argument is a matter of right.   (Code
Civ. Proc., sec. 607; *Douglass* v. *Hill*, 29 Kan. 527.)   In the
Douglass case, Mr. Justice Brewer, speaking for the court,
said: "This is no matter of discretion on the part of the court,
but an absolute right of the party.   Courts doubtless may
prevent their time from being unnecessarily occupied by pro-
lix arguments, and so may limit the time which counsel shall
occupy.   And if the restriction is a reasonable one in view
of the questions involved and the testimony presented, there
will be no error.   But limiting the time of an argument and
refusing to permit any argument at all, are entirely different
matters.   The one is the exercise of a discretion, the other
is a denial of a right."   The statute does not expressly pro-
vide for argument in the case of a trial by the court (Code
Civ. Proc., sec. 631 et seq.), and there would seem to be
reason for leaving it to the wise discretion of the judge, but
where there is room for argument it would certainly be the
better practice to permit it.   If the trial judge, at the close
of the evidence, is entirely satisfied as to his decision, argu-

ment would generally be of no avail, but even then, counsel might be able to make suggestions that would influence the judicial mind. However, this point need not be considered further, as we think, upon the other ground, the judgment must be reversed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.