NATIONAL BANK OF BAKERSFIELD et al. v. MOORE (two cases).*

(Circuit Court of Appeals, Ninth Circuit.   January 7, 1918.)

No. 2957.

1. CHATTEL MORTGAGES ⬤⟩186—VALIDITY—NOTICE.

Under Civ. Code Cal. § 2955, declaring that mortgages may be made on all growing crops and upon any and all kinds of personal property except the stock in trade of a merchant, a chattel mortgage on a merchant's stock in trade, though recorded, imports no constructive notice to the world, and though valid between the parties is invalid as to creditors of the mortgagor and subsequent purchasers for value in good faith.

2. CHATTEL MORTGAGES ⬤⟩191—POSSESSION—MODE OF TAKING POSSESSION.

In view of Civ. Code Cal. § 3440, declaring that every transfer of personal property and every lien thereon other than a mortgage when allowed by law, if made by a person having at the time the possession and control of the property and not accompanied by an immediate delivery and followed by an actual and continued change of possession, is conclusively presumed to be fraudulent and therefore void, a bank which, after receiving chattel mortgages on a merchant's stock of goods for some time withheld them from record and then recorded them, cannot, where even after recordation the business was continued in the name of the merchant, be deemed to have taken possession of the stock, though it was arranged that one of the merchant's employés should keep a record of all property sold or brought in.

3. CHATTEL MORTGAGES ⬤⟩196—VALIDITY—WITHHOLDING FROM RECORD.

Under Civ. Code Cal. § 2957, declaring that a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith and for value, unless it is made in good faith and without design to hinder, delay, or defraud creditors, and unless it is recorded as a grant of real property, the recordation provision was made to excuse the want of immediate delivery, and where a bank for a considerable period withheld chattel mortgages from record, not placing them on record until it discovered that the mortgagor was in difficulties, such chattel mortgages are invalid as to creditors of the mortgagor, regardless of whether they became creditors before or after its execution.

4. BANKRUPTCY ⬤⟩184(2)—INVALID TRANSFERS—AUTHORITY OF TRUSTEES.

Under Bankruptcy Act July 1, 1898, c. 541, § 47a, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. 1916, § 9631), declaring that the trustee shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, the trustee in bankruptcy must be deemed vested with the status of a lien creditor, though there were no such creditors at the time the petition in bankruptcy was filed, and hence is entitled to attack chattel mortgages not recorded by the mortgagee until discovery that the debtor was in failing circumstances.

5. BANKRUPTCY ⬤⟩184(2)—INVALID TRANSFERS—AUTHORITY OF TRUSTEES.

Under Bankruptcy Act July 1, 1898, § 60b (Comp. St. 1916, § 9644), providing that, if at the time of recording a transfer, if by law recordation is required, and being within four months before the petition in bankruptcy, or after the filing thereof, and before adjudication, the bankrupt be insolvent and the transfer operates as a preference, and the person receiving it shall then have reasonable cause to believe that the enforcement of such transfer would effect a preference, it shall be voidable by the trustee, a trustee in bankruptcy as the representative of general creditors may attack as preferential chattel mortgages given by the bankrupt, where under the state law they were required to be recorded,

and they were not recorded until within four months of the filing of the petition.

6. BANKRUPTCY ⬅➡303(3)—PREFERENCES—EVIDENCE—SUFFICIENCY.

Where the trustee in bankruptcy attacked chattel mortgages as preferential, evidence *held* to show that before their recordation, which was essential to validity, the mortgagee was charged with notice of facts at least sufficient to put him on inquiry which would have disclosed that he was obtaining a preference.

7. BANKRUPTCY ⬅➡188(3)—TITLE OF TRUSTEE—STATUTE.

Under Bankruptcy Act July 1, 1898, §§ 67d, 67e (Comp. St. 1916, § 9651), declaring that liens given or accepted in good faith and not in contemplation of or in fraud of the act which have been recorded according to law, if record be necessary, shall not be affected by the act, but that all conveyances in fraud of creditors, etc., shall be null and void, a creditor, who withheld chattel mortgages from record until he discovered that the debtor was in failing circumstances cannot, having acted deliberately and the statute requiring the recordation of such mortgages as a condition to their validity, assert an equitable lien on the property.

8. EQUITY ⬅➡267—PLEADING—AMENDMENT.

The allowance of an amendment to a bill is a question within the discretion of the court.

9. BANKRUPTCY ⬅➡303(3)—PREFERENCES—EVIDENCE.

In a suit by a trustee in bankruptcy to set aside as preferential a deed of trust executed by a bankrupt, evidence *held* sufficient to show that the trust deed was preferential.

Appeals from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suits by William H. Moore, Jr., as trustee of the estate of Alfred W. Bannister, a bankrupt, against the National Bank of Bakersfield, a corporation organized and existing under and by virtue of the laws of the United States, and others. From decrees for complainant, defendants appeal. Affirmed.

The appeals herein embrace two cases which were tried together and may be conveniently disposed of in one opinion. The suits were brought by Moore, as trustee in bankruptcy of the estate of Bannister, bankrupt, against the defendant bank to set aside a number of chattel mortgages and a deed of trust made by Bannister for the benefit of the bank. The District Court decreed that the several conveyances were of no effect, and that preferences in favor of the bank had been created. The bank appeals. The first case is referred to as B–94, the second as A–32.

B–94.

The evidence tends to show these facts: Bannister was in the business of buying and selling hay and grain at and about Bakersfield, Cal., with a warehouse in Bakersfield and one at Wyble Siding, near Bakersfield. In November, 1914, Bannister commenced to do business with the defendant bank, and he and the cashier, Russell, had an understanding whereby Bannister could borrow money from the bank as he might need it, and that the bank would take chattel mortgages on personal property belonging to Bannister, and that the mortgages would be held without recording, unless in the opinion of the bank some necessity should arise which would make it seem proper for the bank to put the instruments on record. Such an arrangement had formerly existed between Bannister and the bank with which Mr. Russell had formerly been connected. Bannister borrowed $2,500 in November, 1914; $1,000 on December 1, 1914; $1,500 December 9, 1914; $1,500 on December 21, 1914; $1,500 on January 4, 1915; and $1,000 on January 5, 1915. Each of these

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

loans was secured by a chattel mortgage upon the hay or hay and grain in the mortgagor's warehouses, but none of the mortgages was ever recorded. On December 21, 1914, as additional security for the note for $1,500 made December 21, 1914, Bannister gave a chattel mortgage upon a corrugated iron warehouse at Wyble Siding, and on January 5, 1915, to secure the loan for $1,000 made on that day, he made a mortgage upon his automobile. On January 12, 1915, Bannister borrowed $1,500 additional from the bank and gave a mortgage upon 200 tons of grain and hay in his warehouse at Wyble Siding, and on the same day, to secure all the notes that he had previously given, he made a blanket mortgage on all the hay and grain in his two warehouses. This blanket mortgage covered practically all of the stock in trade that Bannister then had, and all that was remaining of the original property which had been covered by the previously given unrecorded chattel mortgages. The two mortgages given January 12, 1915, and the two mortgages covering the Stutz automobile and the corrugated iron warehouse were recorded on the afternoon of April 23, 1915. The bankrupt continued to sell goods covered by the chattel mortgages, and replaced the same by new goods purchased, and sales were carried on as in the ordinary course of business, with the result that there was confusion of such mortgaged goods as were remaining with new goods bought and substituted for the goods sold from the mortgaged stock. This course of business was known to the bank between January 12th and April 23, 1915, but the bank made no objection, and creditors other than the bank did not know of the existence of the chattel mortgages. On April 21, 1915, bankrupt's home in Los Angeles was attached. The bank heard of his having financial trouble, and on April 23d put its mortgages on record.

Petition in bankruptcy was filed May 5, 1915. Subsequent to April 23, 1915, the date of the recording of the mortgages, the bank received $9,881.13, of which $500 was paid May 4th, and $500 on May 5th, and the balance on May 6th, and afterwards. The entire $9,881.13 was received by the bank from the proceeds of the sale of a portion of mortgaged hay and grain, and other hay and grain commingled with the mortgaged stock. The proceeds were placed to bankrupt's credit and checks were given by him to the bank to cover the amounts.

### A–32.

In this suit the court declared the deed of trust to be null and void. The instrument was dated April 8, 1915, executed by bankrupt, and conveyed to Russell and another, as trustees for the National Bank of Bakersfield, defendant herein, certain real property in Kern county, Cal., and was made to protect loans of $10,000 made by the bank to Bannister. The deed was recorded April 23d of the same day that the chattel mortgages referred to in the preceding case were put on record. The evidence shows that Bannister was a large stockholder in the Los Angeles Hay Storage Company, a corporation. The corporation was embarrassed, and about April 7th it was suggested to Bannister that the corporation should go into bankruptcy. On April 8th Bannister told the defendant bank of the financial troubles of the hay company, and the bank knew that Bannister was a large stockholder in that corporation.

Wm. J. Hunsaker, E. W. Britt, and G. Harold Janeway, all of Los Angeles, Cal., for appellants.

Lucius K. Chase and Ernest U. Schroeter, both of Los Angeles, Cal., for appellee.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH, District Judge.

HUNT, Circuit Judge (after stating the facts as above). Appellant's position as presented by the assignment of errors is that there is no showing of the amount of proved claims; that the evidence fails to show that when the mortgages and deed of trust were made or put on

record the bank had reasonable cause to believe that the transfers would operate to effect preferences; that the bank had an equitable lien upon the property covered by the chattel mortgages arising out of the fact that it held prior mortgages securing all the notes except the one covered by the blanket mortgage.

[1] Inasmuch as the hay and grain in the warehouses constituted the stock in trade of Bannister, a hay and grain merchant, the mortgages covering such property were made without authority of the law of California. Section 2955 of the Civil Code of California provides:

"Mortgages may be made upon all growing crops, including grapes and fruit, and upon any and all kinds of personal property, except the following: * * * 3. The stock in trade of a merchant."

[2] The stock in trade, the hay and grain, not being lawfully subject to mortgage, the recording of such a mortgage would impart no constructive notice to the world. This was the holding of the Supreme Court of California in Bank of Ukiah v. Moore, 106 Cal. 679, 39 Pac. 1071. As between the parties and as against all others except creditors of the mortgagor, and subsequent purchasers for value in good faith, such a mortgage could be upheld. Perkins v. Maier & Zobelein Brewing Co., 133 Cal. 498, 65 Pac. 1030. But we are here concerned with the interests of creditors of the mortgagor. It is said that the bank took possession of the property on April 23d, when the mortgages were put on record. Upon the question of possession the cashier testified that on April 23d, he arranged with Mrs. Fitzpatrick, who had been and was then employed by Bannister, to come to the warehouse to keep a record of everything that went in and out; that Bannister knew she was there; that she reported daily, but the practice was to hold some cash to keep the business going; that Bannister assisted in sales of property at the warehouse and paid by check; that after April 24th the bank credited the receipts to Bannister's account to straighten out his account and as a matter of bookkeeping; that shortly before the 24th the chattels covered by the mortgages were about as they were afterwards; that sales made after April 24th were reported to Mrs. Fitzpatrick, and in certain instances shipped in the name of the bank. Bannister himself testified that he commenced to work at the warehouse on April 24th, was in possession thereof until May 5th, and carried on the business as it had previously been conducted, and with the same employés; that no signs were changed; that he shipped goods in his name after the 24th of April, and that the first shipment made by the bank after the recording of the mortgages was on May 6, 1915; that he paid to the bank $8,881.13 from the sale of the mortgaged hay and grain.

We are inclined to believe that where possession is relied upon to sustain a transfer which will be held binding as against creditors, it should be of a character more open and visible than is claimed by the bank in this instance. Center v. Kelton, 20 Cal. App. 611, 129 Pac. 960. Section 3440 of the Civil Code of California provides that:

"Every transfer of personal property * * * and every lien thereon, other than a mortgage, when allowed by law * * * is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed

by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any persons on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or incumbrancers in good faith subsequent to the transfer."

There really was no immediate delivery and no actual and continued change of the possession of the chattels mortgaged. In Center v. Kelton, supra, the court referred to many California decisions applying the principle of section 3440 quoted above, and, after writing of the object of the statute as requiring notice to the world of the transfer of personal property in order that creditors may be justly protected, said:

"It may be said, also, that the statute does not impose any great hardship upon the parties in case of a transfer made in good faith. Ordinarily, there should be little difficulty in effecting an 'immediate delivery' and an 'actual and continuous change of possession.' But, however honest the sale may be, and whatever hardship may be inflicted upon the vendee, this furnishes no sufficient reason for disregarding the plain provisions of the statute or setting at naught a wholesome and salutary rule for the promotion of personal honesty and commercial security."

Let us turn now to another viewpoint.

[3] The record shows that between the time of the execution and the recording of the mortgages the bankrupt incurred a number of debts. These debts were never secured, and were contracted while the mortgages were held by the bank, with no notice whatever to creditors other than the bank. Under section 2957 of the Civil Code of California, a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith and for value, unless it is made in good faith and without design to hinder, delay, or defraud creditors, and unless it is recorded as grant of real property. In Ruggles v. Cannedy, 127 Cal. 291, 53 Pac. 911, 59 Pac. 827, 46 L. R. A. 647, the Supreme Court of the state held that a chattel mortgage withheld from record beyond a reasonable time necessary for its being put on record is void as against creditors. Debts were there contracted between the execution and recording of the mortgages. The reasoning of the court was that recording a chattel mortgage is meant to be a substitute for "immediate delivery" and "change of possession," and that the law contemplates immediate recording or recording within a reasonable time. The court said:

"A mortgage without immediate delivery would create a secret lien, admittedly void against creditors. Is a mortgage without immediate recordation any less a secret lien, or any less an evil to be avoided? Prior to the amendment to section 2955 of the Civil Code, * * * if a person had desired to borrow money upon his farming implements he would have been compelled to transfer possession immediately under section 3440 of the Civil Code. By the amendment these implements are placed in the list of those upon which statutory chattel mortgages may be given. * * * We conclude upon this question that our law requires immediate recordation in lieu of immediate delivery, and that when such recordation is not effected the mortgage 'is void as against creditors of the mortgagor.' The penalty for a failure to record promptly in the case of a mortgage is identical with the penalty under section 3440 for a failure to delivery promptly in the case of a sale. In either case

the failure results in a legal fraud against those whom the statute enumerates and protects. Section 3440 excepts a 'mortgage when allowed by law' from the requirement of immediate delivery, because, and only because, the recordation takes the place of delivery. It certainly cannot be said that it was the design of the Legislature to exclude the articles of personal property affected by such mortgages from the operation of the laws forbidding secret liens."

The court, through Judge Henshaw, continuing its learned discussion of the policy of the recording laws of the state, said that it had been decided:

."(1) That neither in the case of a sale nor of a mortgage would a delayed delivery validate the contract against creditors; and (2) that it was not necessary that these creditors should have acquired rights by judgment or attachment before delivery of the chattel sold or mortgaged to warrant their setting aside the transfer. Our recordation laws, admittedly being but a substitute for such immediate delivery, certainly have not changed the principles here announced, and should not be said to have changed the rule which elsewhere finds abundant support."

This case was approved in Hopper v. Keys, 152 Cal. 488, 92 Pac. 1019. The court defined creditors as those to whom, from time to time, the debtor became obligated. There too, it was contended that, even though an unrecorded mortgage is void in the instance of creditors, still only such creditors could take advantage of the law as by judgment and levy had acquired a lien upon the property before recordation. But the court held that under the statute of the state, immediate recordation being exacted, or immediate delivery being required, the result of a failure to record was to render the contract absolutely void as to creditors. In re Mission Fixture & Mantel Co. (D. C.) 180 Fed. 263. In this last case, where the statute of the state of Washington requiring the recordation of chattel mortgages was considered, Judge Donworth said that a creditor within the contemplation of the statute was one to whom the debtor was obligated, even though the inception of the obligation antedated the making of the chattel mortgage. And in Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073, it was held that the statute in using the word "creditors" did not mean to distinguish between a creditor who became such before one who became a creditor after the execution of the mortgage. See, also, Union National Bank v. Oium, 3 N. D. 193, 54 N. W. 1034, 44 Am. St. Rep. 533.

[4] The attitude of the trustee in bankruptcy under section 47a of the Bankruptcy Act as amended June 25, 1910, is next necessary to be inquired into. U. S. Comp. St. 1916, § 9631. In Pacific State Bank v. Coats, 205 Fed. 618, 123 C. C. A. 634, Ann. Cas. 1913E, 846, it was held by this court that the object of the amendment cited is to vest in the trustee for the interest of all creditors the potential rights and remedies of creditors possessing or holding liens upon the property coming into his custody by legal or equitable proceedings. We there said:

"The trustee no longer stands in the shoes merely of the bankrupt, with the limited rights of the bankrupt to attack unrecorded liens which may be valid and unimpeachable by such bankrupt; but the amendment by opera-

tion of law vests in him a lien equivalent to such as would be acquired by legal or equitable proceedings upon the property coming into his custody by virtue of the bankruptcy proceedings."

In Scandinavian-American Bank v. Sabin, 227 Fed. 581 (142 C. C. A. 211), Judge Morrow, writing for the court, said that:

"The trustee is not limited to such objections to a transaction between the bankrupt and a creditor as the bankrupt might have had, but he may make any objection that a creditor holding a lien might make."

The trustee in the interest of the general creditors may therefore contest any claim of lien that a judgment creditor might contest if bankruptcy had not intervened. In re Lane Lumber Co., 217 Fed. 550, 133 C. C. A. 402. In Re Pittsburg Big Muddy Coal Co., 215 Fed. 705, 132 C. C. A. 81, the Court of Appeals for the Seventh Circuit held that under the amendment the trustee could make such a contest whether there were or were not any such creditors when the petition in bankruptcy was filed, and regarded the trustee as having the status of a creditor holding a lien by legal or equitable process as of the time when the petition in bankruptcy is filed. And we hold accordingly. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275.

[5, 6] But if we could go no farther than to say that the mortgages are regarded as invalid as against creditors until recorded, but as having validity thereafter, still the appellants could not prevail. Section 60b of the Bankruptcy Act (Comp. St. 1916, § 9644) provides that, if at the time of recording a transfer, if by law recordation is required, and being within four months before the petition in bankruptcy, or after the filing thereof and before the adjudication, the bankrupt be insolvent, and the transfer then operates as a preference, and the person receiving it shall then have reasonable cause to believe that the enforcement of such transfer would effect a preference, it shall be voidable by the trustee.

In Bunch v. Maloney, 233 Fed. 967, 147 C. C. A. 641, the Court of Appeals for the Eighth Circuit held that where there is a state statute providing that an unfiled or unrecorded transfer shall be void as to creditors, the trustee in bankruptcy, "as the representative of general creditors, may invoke the remedy of section 60b, regardless of the local construction of the statute making a procedural distinction between creditors with a lien and those without." We are of the opinion that the defendant bank cannot successfully contend that it did not have reasonable cause to believe in April, 1915, before the mortgages were recorded, that by recording and enforcing them a preference would be effected in its favor. It is not to be seriously questioned that bankrupt was insolvent in April, 1915. It is true that in his schedules he included assets in the amount of $59,157, but a single item of this, $17,492, a claim against the Los Angeles Hay Storage Company, had no value, and certain pieces of property were listed at valuations much in excess of their actual value. It also appears that his liabilities, placed at $46,756 did not include $9,200 of $10,500 due by him to the National Bank of Bakersfield, and did not include certain other obligations of his aggregating approximately $6,000. Mr. Russell had had occa-

sion to examine the books of bankrupt between January and April; he knew Bannister's house had been attached, and when he put the mortgages on record, after he learned that Bannister was in financial difficulties through the embarrassment of the Los Angeles Hay Storage Company, he intended, of course, to obtain an advantage for the bank. The circumstances were clearly such as put him upon inquiry. In re Dorr, 196 Fed. 292, 116 C. C. A. 112.

[7] The defendants' contention that the bank has an equitable lien is also without substantial merit. Not stopping to recite the facts again, it is enough to say that the bankrupt continued to carry on business by selling parts of the mortgaged goods, and out of the proceeds bought other goods of like character, and also to pay part of his debt to the bank, and to defray the expenses of his business. When he sold part of the grain and hay, undoubtedly he applied the receipts from the sales to the bank in order to reduce his debt to it; and when he bought new hay or grain, he seems to have put it in with that which had previously been mortgaged. To sustain the bank in a claim of equitable lien would be to allow the debt due to the bank to be decreased, and the security to be added to. But beyond this the bank is not in a position to claim an equitable lien, which can precede the title of the trustee, for notwithstanding the knowledge which its officers had of the situation it deliberately kept the existence of the mortgages secret, and refrained from putting them upon record. Sections 67d and 67e of the Bankruptcy Act (Comp. St. 1916, § 9651); Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Scandinavian-American Bank v. Sabin, supra; Fourth Street National Bank v. Millbourne Mills Co., Trustee, 172 Fed. 177, 96 C. C. A. 629, 30 L. R. A. (N. S.) 552.

[8] We find no error in the ruling of the court in allowing amendment to the original bill. The matter was one within the discretion of the court.

A–32.

[9] The principal question involved in this matter is whether the bank received a preference by receiving and recording the trust deed referred to, dated April 8 and recorded April 23, 1915. There was ample information conveyed to the bank to cause its officers to believe that the effect of the taking of the trust deed would be to create a preference in favor of the bank. Bannister was unquestionably insolvent when he made the deed, and under the conditions which existed the bank must be held to have had reasonable ground for believing that the taking of the trust deed would effect a preference in its favor.

In B–94 the decree, after holding the chattel mortgages to be void, and that payments of $1,000 made by Bannister to the bank between April 23 and May 5, 1915, were preferences, recited that, no moral turpitude on the part of the bank being found, it could file its unsecured general claim against the estate of Bannister, bankrupt, within 60 days after entry of final judgment for the amount unpaid upon the promissory notes referred to in the purported chattel mortgages. In A–32 the trust deed was decreed to be null and void, and the gran-

tees in the trust deed were directed to reconvey the property to the trustee of the bankrupt.

These decrees are affirmed.