[No. G016144. Fourth Dist., Div. Three. Aug. 25, 1998.]

MEDITERRANEAN CONSTRUCTION COMPANY et al., Plaintiffs and Appellants, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Respondent.

[No. G016218. Fourth Dist., Div. Three. Aug. 25, 1998.]

MILDRED ELIZABETH PETERSEN, Plaintiff and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Respondent.

[No. G016615. Fourth Dist., Div. Three. Aug. 25, 1998.]

MEDITERRANEAN CONSTRUCTION COMPANY et al., Plaintiffs and Respondents, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Appellant.

258

COUNSEL

Turner, Cooper and Reynolds, Frederick E. Turner, Robert F. Zwierlein and Robert M. Grandon for Plaintiffs and Appellants and for Plaintiffs and Respondents.

Levine & Eriksen and Marc R. Levine for Plaintiff and Appellant.

Robie & Matthai, James R. Robie, Maria Louise Cousineau, Pamela E. Dunn and Claudia M. Sokol for Defendant and Appellant and for Defendant and Respondent.

**OPINION**

**CROSBY, J.**—The summary judgment statutes repeatedly speak of a "hearing" on the motion. There are time limits for when the hearing may be held and provisions allowing evidentiary and other objections to be raised "at" the hearing in lieu of a written submission.

We interpret these provisions to require an *oral* hearing at which counsel has the opportunity to persuade the court and respond to its inquiries. This means more than posting a ruling on a locked courtroom door or telephoning litigants with an ex cathedra decision. A "hearing" on summary judgment involves the contemporaneous presence (whether in person or electronically) of the parties and a judge.

While judges retain considerable discretion to limit oral argument, they cannot do away with it altogether. There is a fundamental difference between demanding brevity and imposing silence.

We reverse to allow the parties to speedily resolve the central question in this coverage dispute regarding a defectively constructed condominium project: Who owned the property when it sustained tangible property damage? This issue may be properly resolved by summary judgment.

## I

Joseph Campobasso, the president and sole shareholder of the named insured, Mediterranean Construction Company, entered into the "Lampson Estates" written joint venture agreement with Mildred Elizabeth Petersen and Columbia Savings and Loan to acquire land in Garden Grove to construct and sell 12 townhouses.[1]

The joint venture agreement called upon Petersen to contribute her fee title in property she owned in exchange for a capital account credit of $120,000 and a 25 percent interest in the joint venture.[2] Mediterranean would act as general contractor to diligently complete the project within a reasonable time not to exceed two years. But it took six years for the project to be finished. Not surprisingly, it "lost money and [Petersen] did not receive a return of her capital investment. [Her] return was eaten up to pay for repairs caused by negligent work performed on behalf of Mediterranean . . . ."[3]

Petersen sued Mediterranean for breach of the joint venture agreement, negligence, fraud, constructive trust, and an accounting. She sought damages

---

[1]Petersen's name is variably spelled in the record as both "Petersen" and "Peterson." She herself used different spellings in her own signed declarations. We adopt "Petersen" since it is the latest incarnation adopted in her appellate briefs. Unless otherwise noted, we refer to Mediterranean and Campobasso jointly as "Mediterranean."

[2]According to the agreement, additional parcels for the subject property were being acquired from a Mr. and Mrs. Pimsaguan through Columbia's capital contribution of $240,000.

[3]The construction problems included defectively constructed roofs by a roofing subcontractor "so that when it rained, the water ran down the inside of the walls, causing significant damage throughout the rest of the structure. This had to be repaired at the expense of the

for lost profits, lost title, loss of her capital account credit, and for liability for labor and material expended in conjunction with the project.

Mediterranean tendered its defense to State Farm, which provided coverage under several comprehensive general liability policies (including a broad form endorsement) and an umbrella policy. State Farm declined to defend, and Petersen and Mediterranean entered into a $278,000 stipulated judgment with a covenant not to execute and an assignment of rights. Both filed their own bad faith lawsuits against State Farm, with Petersen seeking to recover for the stipulated judgment, and Mediterranean seeking damages for attorney fees and Campobasso's emotional distress.[4]

State Farm moved for summary judgment against Mediterranean. The carrier argued it had no duty to defend or indemnify because Petersen's claims exclusively arose under the joint venture agreement and sought purely economic losses. In opposition Mediterranean submitted Petersen's declaration, claiming she sustained tangible property damage because she was "forced to expend money to correct construction defects and to otherwise correct the condition of the premises." Neither the moving nor opposing papers established who owned the subject property during the time the property damage was allegedly sustained.

The hearing on the summary judgment motion was set for a Wednesday morning. State Farm's reply (which Mediterranean did not receive until the Monday before the hearing) raised several additional grounds why summary judgment should be granted, including the joint venture exclusion and the broad form property endorsement.

On the morning of the hearing, the clerk telephoned counsel to report that the court (Judge Horn) had granted the motion and there would be no hearing. Despite this, counsel for both sides appeared, but were denied permission to argue the merits, object to the evidence, or respond to the other side's papers.

The court ruled State Farm had no duty to defend or indemnify because Petersen's suit "involves tort—not contractual—liability; and . . . [t]he damages claimed are lost profits and monies, not tangible property damage."

partnership. There were also defects in the installation of cabinets and windows and a variety of other miscellaneous items in each of the units."

[4]We are surprised they were not consolidated until appeal. Mediterranean's bad faith suit ultimately landed in Judge Horn's courtroom; Petersen's was assigned to Judge McDonald. Petersen also has appealed from a separate summary judgment issued by Judge McDonald on virtually identical grounds. Unlike Judge Horn, Judge McDonald did conduct a hearing.

The court overruled all evidentiary objections and denied Mediterranean's motion to strike State Farm's reply.

## II

■ The Legislature has enacted a "detailed procedural scheme" in Code of Civil Procedure section 437c for summary judgments. (*Sierra Craft, Inc.* v. *Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1255 [75 Cal.Rptr.2d 681].) Any superior court policy or practice that "improperly interferes with a party's right to move for summary judgment or summary adjudication of issues . . . is invalid." (*Lokeijak* v. *City of Irvine* (1998) 65 Cal.App.4th 341, 344 [76 Cal.Rptr.2d 429] [overturning local requirement that parties have "brief meeting" with trial court before filing summary judgment motion].) And because summary judgment is such a "drastic" remedy, it is important for opposing parties as well "that all of the procedural requirements for the granting of such a motion be satisfied . . . ." (*Sierra Craft, supra,* 64 Cal.App.4th at p. 1256 [invalidating local rule authorizing summary judgments even as to parties who did not file their own motions].)

■ The superior court erred in issuing a ruling on State Farm's motion for summary judgment without permitting oral argument. We construe the references to a "hearing" in Code of Civil Procedure section 437c to require the opportunity for oral argument where the litigants may address the judge who will rule on the motion.

Code of Civil Procedure section 437c imposes evidentiary burdens and procedural requirements for parties who seek to pierce the pleadings and terminate an action without trial. There are repeated statutory references to a "hearing," including a 33-day notice requirement (if service is by mail) for the "time appointed for hearing" and a 30-day statutory cutoff for when a motion must be "heard" before the date set for trial. (Code Civ. Proc., § 437c, subd. (a).)[5]

In *Sadlier* v. *Superior Court* (1986) 184 Cal.App.3d 1050, 1054 [229 Cal.Rptr. 374], the court deemed a motion for summary judgment to be

[5]Code of Civil Procedure section 437c, subdivision (a) provides as follows: "Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding. The motion may be made at any time after 60 days have elapsed since the general appearance in the action or proceeding of each party against whom the motion is directed or at any earlier time after the general appearance that the court, with or without notice and upon good cause shown, may direct. Notice of the motion and supporting papers shall be served on all other parties to the action at least 28 days *before the time appointed for hearing.* However, if the notice is served by mail, the required 28-day period of notice shall be increased by five days if the place of

" 'made' orally in court at the time of the hearing," even though Code of Civil Procedure section 1005.5 declared motions to be made "upon the due service and filing of the notice of motion . . . ." (Italics added.) *Sadlier* adopted this construction to avoid the 60-day "hold" for prematurely filed motions at the beginning of a case. (Code Civ. Proc., § 437c, subd. (a).) To rule otherwise, *Sadlier* reasoned, "would 'deprive a party of a hearing of the motion to which he is otherwise entitled' . . . ." (*Sadlier, supra,* 184 Cal.App.3d at p. 1054.) According to *Sadlier,* "The language in section 1005.5 that 'this shall not deprive a party of a hearing of the motion to which he is otherwise entitled' is crucial." (*Ibid.*)[6]

Various court rules regarding hearings also show an intent to allow for oral hearings. (Cal. Rules of Court, rules 321, 324.5.) While litigants are not given the right to present testimony at such hearings, there are no restrictions against oral argument. (See Cal. Rules of Court, rule 323.)

Numerous other statutory provisions demonstrate the clear legislative intent that litigants be allowed an *oral* hearing on summary judgment motions. Code of Civil Procedure section 437c, subdivision (d) provides any objection based on the sufficiency of declarations or admissibility of evidence "shall be made *at the hearing* or shall be deemed waived." (Italics added.)[7] This is repeated as a negative admonition as well: "Evidentiary objections not made *at the hearing* shall be deemed waived." (§ 437c, subd. (b), italics added.) The Legislature plainly intended to distinguish between written and oral argument—both of which are elements of the summary judgment process. Litigants who raise evidentiary objections at the hearing (as opposed to written objections in advance) must arrange for a court

---

address is within the State of California, 10 days if the place of address is outside the State of California but within the United States, and 20 days if the place of address is outside the United States, and if the notice is served by facsimile transmission, Express Mail, or another method of delivery providing for overnight delivery, the required 28-day period of notice shall be increased by two court days. The motion shall be *heard* no later than 30 days before the date of trial, unless the court for good cause orders otherwise. . . ." (Italics added.)

[6]Code of Civil Procedure section 1005.5 states, "A motion upon all the grounds stated in the written notice thereof is deemed to have been made and to be pending before the court for all purposes, upon the due service and filing of the notice of motion, *but this shall not deprive a party of a hearing on the motion to which he is otherwise entitled.* Procedure upon a motion for new trial shall be as otherwise provided." (Italics added.)

[7]Code of Civil Procedure section 437c, subdivision (d) states: "Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations. Any objections based on the failure to comply with the requirements of this subdivision shall be made at the hearing or shall be deemed waived."

reporter to attend the hearing to record their objections for the record. (Cal. Rules of Court, rules 343, 345.) Again, this shows an expectation that basic due process will be followed in summary judgment proceedings, i.e., fair notice and an opportunity to be heard.

Here, State Farm raised new arguments in its reply papers regarding various coverage exclusions (including the joint venture exclusion and several provisions in the broad form endorsement.) Given these 12th-hour circumstances, Mediterranean was entitled to orally move at the hearing for a postponement to give it sufficient time to respond. (E.g., *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1168 [208 Cal.Rptr. 345].) Oral motions to continue also may be made at the hearing to allow sufficient time to amend "[i]f it becomes clear at the hearing that defects can be cured by amending the pleading[] . . . ." (2 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 3d ed. 1998) § 46.4, pp. 46-4 to 46-5.)[8]

Equally important, hearings afford litigants their only opportunity to orally argue their case and to respond to the court's inquiries through the give-and-take of questioning. Any experienced lawyer who has doggedly waited through a tedious law-and-motion calendar understands the need, when his or her turn finally comes, to get to the point. There is no time for a leisurely exposition of the facts or the law; it is necessary to speak out about what is important and to be silent about what is not. This itself performs a valuable service of " 'provid[ing] a fluid and rapidly moving method of getting at essential issues.' " (*Moles* v. *Regents of University of California* (1982) 32 Cal.3d 867, 872 [187 Cal.Rptr. 557, 654 P.2d 740].) As one leading jurist put it, "An oral argument is as different from a brief as a love song is from a novel. It is an opportunity to go straight to the heart!" (Kaufman, *Appellate Advocacy in the Federal Courts* (1977) 79 F.R.D. 165, 171; see also Bright, *The Power of the Spoken Word: In Defense of Oral Argument* (1986) 72 Iowa L.Rev. 35, 37.)

Finally, oral argument enhances the public visibility and accountability of the judicial process. A court should not only "be fair to all litigants; it must also appear to be so." (*Solorzano* v. *Superior Court* (1993) 18 Cal.App.4th 603, 615 [22 Cal.Rptr.2d 401].) Refusing to hear oral argument hardly demonstrates an appearance of fairness. As one court ruefully observed in

---

[8]See also Weil and Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 1998) paragraph 10:22.7, page 10-9: "Language in one case suggests leave to amend must be sought *before the hearing* on the summary judgment motion. . . . [¶] But this dictum seems incorrect. A motion for leave to amend may be made *at the hearing* or, indeed, anytime before judgment." (Second italics added.)

reversing an erroneous order by a trial court disinclined to hear oral argument, "Although we understand oral argument may not be the sine qua non for accurate judicial decision-making . . . [t]he quality and appearance of justice is always improved when a judge listens before he or she decides." (*Cal-American Income Property Fund VII* v. *Brown Development Corp.* (1982) 138 Cal.App.3d 268, 273, fn. 3 [187 Cal.Rptr. 703].)[9]

Recently, in *Baumohl* v. *FHP, Inc.* (1998) 64 Cal.App.4th 1506 [76 Cal.Rptr.2d 322], the court refused to allow references of summary judgment motions without consent of the parties. The notion that a trial court could adopt a referee's report on summary judgment as its own without independently considering the papers "give[s] the appearance of . . . abdication of judicial responsibility." (*Id.* at p. 1525.) While recognizing the "burden of the heavy caseloads carried by trial court judges," *Baumohl* refused to elevate efficiency and calendar management over the " 'integrity of the judicial process.' " (*Id.* at p. 1532.)

We carry *Baumohl* one step further. Trial judges may not elevate judicial expediency over Code of Civil Procedure section 437c's mandate for hearings on summary judgment motions. Although they retain extensive discretion regarding how the hearing is to be conducted, including imposing time limits and adopting tentative ruling procedures (see Cal. Rules of Court, rule 324), they may not entirely bar parties from having a say. That is because " 'limiting the time of an argument and refusing to permit any argument at all, are entirely different matters. The one is the exercise of a discretion[;] the other is a denial of a right.' " (*Center* v. *Kelton* (1912) 20 Cal.App. 611, 615 [129 P. 960].)

### III

We recognize that dicta in *Sweat* v. *Hollister* (1995) 37 Cal.App.4th 603 [43 Cal.Rptr.2d 399], disapproved on another point in *Santisas* v. *Goodin* (1998) 17 Cal.4th 599, 609, fn. 5 [71 Cal.Rptr.2d 830, 951 P.2d 399], viewed as "settled law" that ". . . the court may determine a motion, including presumably a summary judgment motion, without permitting oral argument." (37 Cal.App.4th at p. 613.) A case law survey (the most recent of which was 25 years old) convinced *Sweat* "of the proposition: A court may decide a motion without hearing oral argument." (*Id.* at p. 614.) While regretting the absence of any "recent authorities of, say the 1980's or

---

[9]It is in the nightmare world of Franz Kafka's The Trial (Schocken Books 1992) at pages 228-229, where Josef K. was left wondering, " 'Where was the Judge whom he had never seen?' " (Quoted in *U.S.* v. *Canady* (2d Cir. 1997) 126 F.3d 352, 362.)

1990's," *Sweat* stressed "the length and unanimity of this seasoned line of cases, stretching from 1930 to 1972 . . . ." (*Ibid.*)

We have examined the cases cited in *Sweat* (as well as others that *Sweat* missed) and find them more stale than seasoned. At most, they contain nothing more than a sentence or two announcing a generalized proposition without explanation or analysis. In many, the court found no prejudicial error, either because ". . . the record was completely devoid of any grounds to support granting the motion" (*Ensher, Alexander & Barsoom* v. *Ensher* (1964) 225 Cal.App.2d 318, 325 [37 Cal.Rptr. 327]; see also *Sullivan* v. *Dunnigan* (1959) 171 Cal.App.2d 662, 669 [341 P.2d 404]), or because oral argument was offered but declined (*Oil Workers Intl. Union* v. *Superior Court* (1951) 103 Cal.App.2d 512, 581 [230 P.2d 71]), or because oral argument in fact was conducted (*Gillette* v. *Gillette* (1960) 180 Cal.App.2d 777, 782 [4 Cal.Rptr. 700] [". . . a review of the transcript indicates that counsel did have ample opportunity to argue the case"]). Others concerned litigants who sought to introduce oral *testimony* at hearings, not oral argument—clearly, a different issue (see, e.g., *McLellan* v. *McLellan* (1972) 23 Cal.App.3d 343, 359 [100 Cal.Rptr. 258]; *Haldane* v. *Haldane* (1962) 210 Cal.App.2d 587, 593 [26 Cal.Rptr. 670]; *Beckett* v. *Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695, 698, fn. 3 [321 P.2d 749].)[10]

Further, none of *Sweat's* cases involved a motion for summary judgment, and none analyzed the statutory requirements for "hearings" in Code of Civil Procedure sections 437c, 1005 and 1005.5. None considered basic due process issues. We are more persuaded by the above-described statutory directives than the case snippets relied on by *Sweat* because "[o]ur primary responsibility here is to correctly interpret the statutory language." (*Estate of Cleveland* (1993) 17 Cal.App.4th 1700, 1709 [22 Cal.Rptr.2d 590].) *Sweat* has left an ugly stain on the fabric of California law-and-motion practice.[11]

---

[10]*Sweat* cited one case (*Collins* v. *Nelson* (1940) 41 Cal.App.2d 107, 113 [106 P.2d 39]) that took the incredible position that trial judges not only could dispense with oral argument, but need not even receive or read the briefs. Obviously the *Collins* court must have practiced what it preached.

Although we disagree with *Sweat's* reasoning, we do not necessarily differ with the result. In *Sweat* the plaintiffs sought to voluntarily dismiss their fraud complaint (thereby avoiding contractual attorney fees) upon hearing a recorded telephonic message from the trial judge sustaining the defendants' motion for summary judgment. They unsuccessfully argued there was no "prevailing party" because summary judgment was decided without oral argument. But they waived oral argument when they requested a voluntary dismissal. *Sweat's* lengthy discussion regarding oral argument was unnecessary to the decision.

[11]This court in the past has expressed its frustration with some law-and-motion judges who rely on shaky precedents like those discussed above to refuse to hold oral hearings on critical

IV

██ State Farm argues that the denial of oral argument was not reversible error because ". . . any supplementary evidence or argument would have been fruitless since, as a matter of law, State Farm clearly had no duty to defend plaintiffs in the underlying lawsuit." Prejudice, of course, is an important element, and there is no per se rule requiring reversal. ██ ██ ██ (*M.E. Gray Co.* v. *Gray* (1985) 163 Cal.App.3d 1025, 1037 [210 Cal.Rptr. 285]; *Ensher, Alexander & Barsoom* v. *Ensher, supra,* 225 Cal.App.2d at p. 325.)[12]

██ But the record is not as plain as State Farm makes it out to be. The critical question in this coverage dispute involves the nature of the damages asserted by Petersen in the underlying lawsuit against Mediterranean. The record is unclear as to what her legal status was when the subject property allegedly sustained property damage. Was she merely a passive investor seeking recovery of her intangible economic losses? Or did she remain a property owner who sought damages for her own repair costs? (See, e.g., *Hurley Construction Co.* v. *State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533 [12 Cal.Rptr.2d 629] [no duty to defend general contractor for fraudulently billing for shoddy repair work that resulted in tangible property damage]; *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 217 [169 Cal.Rptr. 278] [no duty to defend action by minority shareholders to recover investment losses in failed bank].)

Petersen's brief cryptically stated, "it was Appellant's tangible real property upon which said condominium project was built." Yet she was vague as to whether she owned the property when the damage was sustained. Her

pretrial matters of considerable significance to the parties. We repeat these concerns here. There is a reason why litigants are afforded their proverbial "day in court"— to speak directly to the decisionmaker. Cold words on a printed page are not the same as a live presentation. Fair warning: Both written and oral argument are complementary parts of good judging and elemental due process.

[12]A trial court's failure to allow for oral argument on summary judgment may be resolved by peremptory writ (*Payless Drug Store* v. *Superior Court* (1993) 20 Cal.App.4th 277, 279 [24 Cal.Rptr.2d 506] [peremptory writ issued to compel trial court to identify triable issues of fact when denying summary judgment]; *Sentry Ins. Co.* v. *Superior Court* (1989) 207 Cal.App.3d 526, 530 [255 Cal.Rptr. 13] [same regarding trial court's refusal to hear petitioner's timely filed motion for summary judgment within 30 days of continued trial date: "We are sympathetic to the problems the trial courts experience in calendaring and hearing the many motions for summary judgment. However, the solution to these problems cannot rest in a refusal to hear timely motions"]; *Wells Fargo Bank* v. *Superior Court* (1988) 206 Cal.App.3d 918, 923 [254 Cal.Rptr. 68] [same: "[t]he superior court's remedy . . . is with the Legislature . . . ."].)

complaint never pleaded this. In response to our queries at oral argument, State Farm's counsel referred us to the contractual provisions in the joint venture agreement obligating her to transfer title as consideration for her interest in the joint venture.[13]

We do not know if what the contract said *should* occur actually *did* occur. Nowhere are we shown evidence of a transfer of title, and the separate statements of fact do not make any reference to the issue of Petersen's property interests. State Farm, as the moving party, bore the burden of demonstrating that one or more elements of the cause of action could not be established or that there was a complete defense. We strictly construe State Farm's papers and liberally construe Petersen and Mediterranean's. (*Leon* v. *Family Fitness Center (#107), Inc.* (1998) 61 Cal.App.4th 1227, 1231-1232 [71 Cal.Rptr.2d 923].) We give no deference to the trial court's ruling, but review the matter de novo. (*Estate of Brenzikofer* (1996) 49 Cal.App.4th 1461, 1466 [57 Cal.Rptr.2d 401].)

We suspect that ownership was formally transferred from Petersen to Lampson Estates. To date we have not seen anything in the record suggesting Petersen continued to own the subject property after the joint venture was formed. Thus, the judgments rendered below ultimately may turn out to be correct, and State Farm may owe no duty to defend.[14]

But we are unwilling to substitute our surmise for State Farm's burden, as the moving party on summary judgment, to show as an undisputed material fact that Petersen did not own the subject property during her prosecution of the underlying action. Presumably, this will be a simple matter for State Farm to establish on remand in its moving papers in favor of summary judgment if the chain of title is as it contends here. We repeat, Petersen has never contended otherwise.

[13]The agreement provided, "[t]he Venture shall commence on the date of acquisition of the subject property *by the Venture* no later than the 15th day of February, 1981 . . . ." It further recited Petersen's "expectation and intent" that Mediterranean would operate "in behalf of the Venture" in "acquiring the Subject Property, and developing, improving and marketing the same . . . ."

[14]That is because State Farm had no duty to defend any lawsuit for intangible economic losses by Mediterranean's investment partners (*Hurley Construction Co.* v. *State Farm Fire & Casualty Co., supra*, 10 Cal.App.4th 533), and it had no obligation to speculate that Petersen would amend her complaint to allege damages she could not claim once she had sold her property to the joint venture. (*Gunderson* v. *Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114 [44 Cal.Rptr.2d 272].)

This legal issue is resolved in a companion decision, involving the same parties to the insurance contract (State Farm and Mediterranean) and the same insurance policies. (*Campobasso* v. *State Farm* (July 29, 1998) G016911 [nonpub. opn.]) involving the same parties.) It was argued before this court on the same calendar as the instant case.

We reversed the summary judgment issued by Judge McDonald barring Petersen's bad faith complaint against State Farm because, although the court permitted oral argument, it nonetheless granted summary judgment on the property damage interest without a clear showing concerning Petersen's property interest in Lampson Estates. This presence (or absence) of a factual dispute should be clarified upon remand.

The judgments are reversed with directions to allow State Farm the opportunity to prepare and file new motions for summary judgment or summary adjudication without prejudice and to have such motions considered in a consolidated proceeding. Any renewed motions should be filed, noticed, heard and decided in accordance with the provisions of Code of Civil Procedure section 437c and in a manner consistent with the views expressed in this opinion.

Because we reverse the summary judgments, we need not decide the issues relating to Judge Horn's ruling on costs. The appeal and cross-appeal from the orders regarding costs are dismissed as moot.

No costs on appeal are awarded in these interim proceedings, but may be allowed to the parties ultimately prevailing below in the discretion of the superior court.

Sills, P. J., and Rylaarsdam, J., concurred.