## HARRY BATES v. HUGH SMITH.

*Sale—Subject-matter—Bona fide purchaser—Increase of live-stock—Notice.*

1. It is essential to the validity of every *executed* contract of sale that there should be a subject-matter to be contracted for; and if it appears that such subject-matter was not, and could not have been, in existence at the time of making the contract, it is of no effect, and may be disregarded by either party.[1]

[1] See *Sherwood v. Walker*, 66 Mich. 568.

2. Notice to the purchaser of a mare that she had been bred to a certain stallion is not sufficient to put him on inquiry as to any rights the owner of the stallion might have or claim growing out of such fact.

Error to Saginaw. (Gage, J.) Argued November 11, 1890. Decided November 21, 1890.

Trover. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Brooks & Conway,* for appellant, contended:

1. As it was impossible for Fraser to deliver the colt to plaintiff before it was born, the question of innocent purchaser has no application; citing *Hull v. Hull,* 48 Conn. 250; *Wolcott v. Hamilton,* 61 Vt. 79; *Andrew v. Newcomb,* 32 N. Y. 417; *Tuttle v. Campbell,* 74 Mich. 652; *Andrews v. Cox,* 42 Ark. 473.

2. Anything having a potential existence, that is, anything which is the natural product or expected increase of something already belonging to the vendor, may be sold; citing Benj. Sales, § 78; *Hull v. Hull,* 48 Conn. 250; *Andrews v. Cox,* 42 Ark. 473; *M'Carty v. Blevins,* 5 Yerg. 195; *Sawyer v. Gerrish,* 70 Me. 254; 1 Pars. Cont. 523, note *k*; Hill. Sales, § 18; Story, Sales, § 186.

3. We do not think defendant can be considered, in any sense, a *bona fide* purchaser of the colt; but, if he were, he could acquire from Fraser only his half interest therein; citing *Tuttle v. Campbell,* 74 Mich. 652; *Andrews v. Cox,* 42 Ark. 473.

*Trask & Smith,* for defendant, contended for the doctrine stated in the opinion.

LONG, J. This is an action of trover to recover the value of a one-half interest in a colt.

The claim of the plaintiff is that he bred the mare of one James Fraser upon shares. The contract, as stated by the plaintiff, is that Fraser came to his farm, and said he wanted to breed his mare to the stallion American Boy, then kept by plaintiff, and that he had no money; that plaintiff then told him he would breed the mare on shares, and, if Mr. Fraser would come to him at any time

within two weeks and give him $50 for the services of the horse, Fraser could have his (the plaintiff's) half-interest in the colt; that the mare was then and there bred under that arrangement, but no written contract was made. James Fraser was called as a witness for the defendant upon the trial, and testified:

"My bargain with plaintiff was that if I did not pay plaintiff fifty dollars within three months, for the service of the stallion, he (plaintiff) was to own a half-interest in the colt."

On cross-examination he states the arrangement substantially as claimed by plaintiff, except that he was to have three months in which to pay the money.

It appears that the mare was bred July 27, 1888, and that the defendant purchased her from Fraser on February 21, 1889, paying therefor the sum of $300. The defendant upon the trial stated that at the time he purchased the mare he had no knowledge that the plaintiff made any claim to her progeny, and that plaintiff never made any claim until the colt was four or five months old. It appeared, however, that before defendant bought the mare he was informed that Fraser had bred her to the stallion American Boy, then kept by plaintiff, but was not advised that any contract was made by which the plaintiff was to have a half-interest in the colt. Demand was made before suit was brought, and the defendant refused to recognize the plaintiff's interest.

Under these facts, the plaintiff's counsel requested the court to instruct the jury that Fraser could not sell the interest of plaintiff in the colt, and that the colt when foaled was the property in common of the plaintiff and defendant, and that the value of the one-half interest could be recovered in this action. This the court refused, and instructed the jury that if, at the time the defendant purchased the mare from Fraser, he

had no knowledge of the arrangement made between plaintiff and Fraser, the title to the colt would pass to the defendant, but that, if he did have knowledge of it, the title would not pass. The jury found a verdict in favor of defendant. Plaintiff brings error. It is contended by plaintiff's counsel that the defendant was not in any sense a *bona fide* purchaser of the colt, but that, if he were, he could acquire from Fraser only his half-interest therein.

It is a general rule that owners in common of property have a right to dispose of their own undivided shares, but such owner cannot sell the whole property, nor any portion thereof except his own, and if he undertakes to dispose of any larger interest his co-owners are not bound thereby. *Russell v. Allen*, 13 N. Y. 173. The principle is well settled that a seller of personal property can convey no greater title than he has, and it makes no difference that the purchaser has no notice and is ignorant of the existence of the other parties in interest. *Couse v. Tregent*, 11 Mich. 65; *Dunlap v. Gleason*, 16 Id. 158; *Tuttle v. Campbell*, 74 Id. 660.

Did the contract, however, which plaintiff claims he made with Fraser convey to him one half-interest? The property upon which the contract was to operate had no potential existence. The mare at that time had not been bred, and it was uncertain that, when bred, she would be put in foal. There was nothing in existence which could be the subject of sale. It is essential to the validity of every executed contract of sale that there should be a thing or subject-matter to be contracted for. And if it appears that the subject-matter of the contract was not, and could not have been, in existence at the time of such contract, the contract itself is of no effect, and may be disregarded by either party. *Strickland v. Turner*, 7 Exch. 208; *Hastie v. Couturier*, 9 Id. 102, 5 H. L. Cas.

673; *Franklin v. Long,* 7 Gill & J. 407. A mere possibility or contingency, not founded upon a right or coupled with an interest, cannot be the subject of a present sale, though it may be of an executory agreement to sell. *Purcell v. Mather,* 35 Ala. 570; *Low v. Pew,* 108 Mass. 347. Though the subject-matter of the agreement has neither an actual nor potential existence, such an agreement is usually denominated an executory contract, and for its violation the remedy of the party injured is by an action to recover the damages. *Hutchinson v. Ford,* 9 Bush, 318; *Pierce v. Emery,* 32 N. H. 484.

Again, it may be said that, where one of two innocent parties must suffer by the fraud of another, he shall bear the loss who by his conduct has enabled such third party to perpetrate the fraud. If the contract was made as claimed by the plaintiff, and there does not seem to be much controversy on this point, yet the plaintiff had it in his power to protect himself, under the provisions of Act No. 280, Laws of 1887 (3 How. Stat. §§ 1621*a*—1621*d*), which provides that the owner or keeper of a stallion shall, after demand upon the owner of the mare for the price agreed upon for service, have a lien upon the get of such stallion for the period of six months after the birth of the foal, for the payment of the services of such stallion. In order, however, to perfect such lien, he must file with the township clerk in the town where such dam is owned the agreement, or a true copy of such agreement, entered into by the owner of the dam for such service, together with such description of the dam as to age, color, or other marks as the person filing such agreement is able to give. This filing is to operate, under the provisions of this act, as a chattel mortgage, and may be enforced in the same way. No such steps were taken. The mare remained in the possession of the owner, Mr.

Fraser, from the time she was bred until in February following, when the defendant purchased her without any notice, so far as this record discloses, of the agreement made between plaintiff and Fraser. It is shown that defendant was advised at the time he purchased that the mare had been bred to American Boy, but no notice was given him that plaintiff had any claim on the foal, and there was nothing upon the record in the town-clerk's office to give him any notice that plaintiff claimed a lien upon or had any interest in the foal. It cannot be said that the mere fact of notice of the breeding of the mare to American Boy was sufficient to put him upon inquiry as to any rights the owner of the stallion might have. The defendant must be regarded as a *bona fide* purchaser and owner of the mare; and, the title and ownership of the foal following the dam, he was the rightful owner of the foal.

We see no error in the case, and the judgment must be affirmed, with costs.

The other Justices concurred.