JOHN W. DICKEY AND ADDISON LURVEY v. GEORGE W. WALDO.

*Sale—Subject-matter—Potential existence—Products of land— Homestead.*

1. The validity of a contract by which a land-owner agrees to set out, and care for and cultivate for 10 years, 1,500 peach trees then in existence, which the other parties to the contract are to furnish him, and take in payment therefor one-half of the peaches grown thereon during any two of the years they may select, which the land-owner agrees to allow them to harvest, is affirmed, as constituting the parties tenants in common of the crop for the years designated.

2. Such a contract need not be signed by the land-owner's wife, although the land is their homestead, the trees being planted upon only a portion of the land, and their occupation and possession of the buildings and land not being interfered with.

3. The language used in *Bates v. Smith*, 83 Mich. 347, if strictly followed, would seem to include the present case, but it must be construed in connection with the facts of that case.

4. The following propositions are summarized from the opinion of Mr. Justice GRANT:

*a*—As a general rule, things having no potential existence cannot be the subject of mortgage or sale.

*b*—In the legal sense, things are said to have a potential existence when they are the natural product or expected increase of something already belonging to one.

*c*—Where one possesses a thing from which a certain product, in the very nature of things, may be expected, such product has a potential existence, and may be the subject of mortgage and sale.[1]

Error to Allegan. (Buck, J., presiding.) Argued April 25 and 26, 1893. Decided October 27, 1893.

Trover. Defendant brings error. Affirmed.

On · February 21, 1885, the plaintiffs and one Schultz entered into the following contract:

"Articles of agreement, made this 21st day of February, A. D. 1885, between John Schultz, of the township of Saugatuck, Allegan county, Michigan, of the first part, and John W. Dickey and Addison Lurvey, of Douglas, county and State aforesaid, of the second part, witnesseth as follows:

"The said party of the first part is the owner of the W. ½ of the E. ½ of the S. W. ¼ of section 25, township of Saugatuck, aforesaid; and, desiring to set out to peach trees a piece just east of his house, and running back to his east line, and far enough south as the piece is suitable for peach trees, but not to exceed 1,500 trees, said first party agrees to set out the trees, and care for and cultivate the same in a good and workman-like manner for the period of ten years from the date hereof, and to allow said Dickey and Lurvey, parties of the second part, to have and take one-half of the crop of peaches for any two years they may select during the aforesaid term of 10 years.

"Said Schultz agrees that, if it shall come to his knowledge

---

[1] See *Wade v. Strachan*, 71 Mich. 459.

that any of the said trees are affected with the yellows, he will immediately dig up and burn the same, root and branch.

"Said Dickey and Lurvey, parties of the second part, hereby agree, in consideration of the agreements hereinbefore stated to be performed upon the part of the said Schultz to furnish what trees may be needed to set the aforesaid piece of land, not to exceed 1,500 trees, and take as pay therefor one-half of the crop of peaches for any two years they may select.

"It is mutually agreed that said Dickey and Lurvey shall make their selection of the year when they will take the half of the crop on or before September 15 of that year.

"Each party hereto are to pick and care for their own share of the fruit, and are to each take as near half of the crop as may be; but, at the close of the season, each shall show up their total shipments for the season, and, if it be found one party has taken more than the other, the net proceeds of such surplus shall be equally divided between the parties hereto. Said Schultz agrees to draw that half of the fruit belonging to said Dickey and Lurvey to the boat landing in Douglas, or railroad depot at Fennville, as they may direct.

"This agreement to be binding upon the legal representatives of the parties hereto.

"Said second parties agree to furnish a man to help set out the trees.

"Witness our hands and seals.

"JOHN W. DICKEY [L. S.].<br>
"JOHN SCHULTZ    [L. S.].<br>
"A. LURVEY       [L. S.].

"In presence of
> "MAY BELLE SPENCER,
> "DYER C. PUTNAM."

This contract was acknowledged by the parties, and was recorded in the office of the register of deeds for Allegan county on March 9, 1885.

Plaintiffs brought suit for the conversion of one-half of the peach crop of 1891 grown from trees set out on said land under the contract. The case was tried before the court without a jury, and the following findings of fact and law were made:

### FINDINGS OF FACT.

"1. That on the 21st day of February, A. D. 1885, John Schultz was the owner and in possession of the W. ½ of the E. ½ of the

97 MICH.—17.

S. W. ¼ of section 25, in the township of Saugatuck, in said Allegan county, and State aforesaid.

"2. That on said day above named the said John Schultz entered into a contract in writing with the said plaintiffs, which contract bore date the day and year aforesaid, and was introduced in evidence on the trial of said cause.

"3. That, at the time said contract was entered into, said parcel of land described in said contract was the homestead of said John Schultz and Deborah Schultz, his wife.

"4. That the plaintiffs, in the spring of 1885, furnished the peach trees required in and by the terms of said contract, and set them on the land described in said contract, and in all things performed the agreements by them to be performed according to the terms of said contract.

"5. That on or about the 23d day of April, A. D. 1887, the said John Schultz and wife conveyed the premises described in said contract to the defendant by warranty deed, with covenants of title and against incumbrances.

"6. That, before and at the time of the execution and delivery of said deed by said John Schultz and wife to said defendant, he, the said defendant, had actual notice and knowledge of the existence and terms of said contract between said Schultz and said plaintiffs; and that, before and at the time of the execution and delivery of said deed, it was agreed between said Schultz and said defendant that said defendant should pay said Schultz $1,850 for said land, instead of $2,000, the full purchase price thereof, and that, as part of the consideration for the sale of said land, said defendant should settle with said plaintiffs for their interest in the peach trees on said land, said defendant at that time supposing that said plaintiffs would take for their interest in said trees the value of said trees at the time of setting, and interest thereon.

"7. That the plaintiffs duly selected the year 1891 as one of the years when they would take one-half of the crop according to the terms of said contract; that said defendant was orally informed by said plaintiffs of such selection, July 4, 1891, and that on or about August 22, 1891, the said plaintiffs gave said defendant written notice of such selection, and afterwards, and on or about the 26th day of August, 1891, offered and attempted to pick their share of the fruit, but defendant refused to permit them to do so, and denied that they had any share of the fruit, and that defendant took and converted to his own use the entire crop of fruit grown on said trees during that year.

"8. That the value of the peaches grown during the year 1891 on the trees set by said plaintiffs on said land under said contract amounted to the sum of $1,541.07 at the time of the conversion of

the same by said defendant to his own use, and that the value of one-half of the peaches at the time when they were so converted by said defendant to his own use was the sum of $770.53.

"9. That the value of one-half of the peaches converted to his own use by said defendant before August 22, 1891, was the sum of $160, as near as the same can be now determined."

CONCLUSIONS OF LAW.

"1. The plaintiffs are entitled to maintain this action, and the contract offered in evidence between said Schultz and said plaintiffs was admissible in evidence.

"2. Said contract did not convey to the plaintiffs any interest in the land described in said contract, except the right to said plaintiffs to take therefrom one-half of the crop of peaches for any two years they might select during the period of 10 years from the date of said contract.

"3. The homestead right of John Schultz and wife was in no way affected by said contract, and the question of the homestead right of said Schultz and wife cannot be raised by said defendant in this action.

"4. Whether said contract was entitled to record or not, or whether such record would be constructive notice to defendant or not, is immaterial, inasmuch as defendant had actual notice of such contract before he purchased said land.

"5. The contract relation between Schultz and plaintiffs was not technically a sale of the peaches thereafter to be grown on said trees by said Schultz to plaintiffs, but was more in the nature of a sale of the trees by plaintiffs to Schultz, plaintiffs reserving in writing one-half of the products of said trees for any two years they might select during the period of 10 years.

"6. The defendant, having notice of said contract before his purchase of said land, and having agreed for a valuable consideration to recognize the rights of plaintiffs under said contract, cannot now claim that said contract was void, or that it was not binding upon him.

"7. The defendant and plaintiffs were the owners in common of the crop of peaches grown on said trees during the season of 1891, and, the defendant having refused to allow plaintiffs to pick their share of said crop, and denied that plaintiffs had any right to any part of said crop, plaintiffs were entitled to their action of trover without and before any accounting as to the amount of said crop, or the share of each of the others therein.

"8. Plaintiffs are entitled to recover in this action, and a judgment should be rendered in their favor, and against said defendant, for the said sum of $770.53, with interest on the same from October 15, 1891,—$23.12,—making a total of $793.65, with costs of suit to be taxed."

*W. B. Williams & Son* (*Hannibal Hart*, of counsel), for appellant.

*Padgham & Butler*, for plaintiffs.

GRANT, J.   The contract and the findings of the court in this case are found in the statement.

This contract and the judgment should be sustained unless there are some inexorable rules of law which stand in the way.   Two rules are invoked to defeat the plaintiffs' action:

1. That the land upon which the peach trees were planted was a homestead; that Schultz' wife did not sign the contract; that it interfered with the homestead right, and was therefore void.

2. That the crop which the plaintiffs agreed to take in payment for the trees was not *in esse* at the time, and therefore not the subject of sale.

1. We think there is no force in the first proposition. Schultz' land consisted of 40 acres.   The trees were planted upon only a portion of it.   The occupation and possession of the buildings and land were not interfered with.   During the growth of the trees, the land could be cultivated and crops raised.   If the trees proved valueless, neither Schultz nor his wife had suffered; if they proved valuable, which was the fact, then the homestead itself was increased in value.   Under these circumstances, we see no reason in holding that either Schultz or his wife had parted with any homestead right, or that their possession was in any manner interrupted.

2. Such contracts are reasonable, and beneficial to both the vendor and the vendee.   They are especially beneficial to the vendee.   He avoids all expense, except his labor, runs no risk, and, if in indigent circumstances, he may obtain gains which would otherwise be beyond his reach. Such contracts are of common occurrence, and, if the rigid rules of law are against their validity, there is a necessity of legislative action to render them valid.

The rule of law is well established that things having no potential existence cannot be the subject of mortgage and sale. There are, however, exceptions to this rule, as where a merchant mortgages his stock of goods, and all future additions thereto. It is unnecessary to cite authorities to this proposition. The difficulty seems to arise in determining what comes within the definition of the term "potential existence." The definition of the word "potential" is, "having latent power; endowed with energy adequate to a result; efficacious; existing in possibility, not in act." Sir W. Hamilton said: "Potential existence means merely that the thing may be at some time; actual existence, that it now is." In the legal sense, things are said to have a potential existence when they are the natural product or expected increase of something already belonging to the vendor. When one possesses a thing from which a certain product, in the very nature of things, may be expected, such product, we think, has a potential existence. The following rule appears to be well established both by reason and authority, viz.; that, when one owns property from which such product naturally arises, such product may be the subject of sale and mortgage. The authorities which thus hold also recognize the other rule above stated. The authorities are by no means uniform, but we think the conflict in them has arisen from a failure to make a proper distinction.

In *Grantham v. Hawley,* Hob. 132, it was held that a grant of that which the grantor has *potentially,* though not *actually,* is good; as a grant by the lessor of all the corn that shall be growing on the land at the end of the term. It was there said:

"Though the lessor had it [the corn] not actually in him, nor certain, yet he had it potentially, for the land is the mother and root of all fruits. Therefore, he that hath it may grant all fruits that may arise upon it after,

and the property shall pass as soon as the fruits are extant. A parson may grant all the tithe wool that he shall have in such a year, yet, perhaps, he shall have none; but a man cannot grant all the wool that shall grow upon his sheep that he shall buy hereafter, for there he hath it neither actually nor potentially."

Powell, in his treatise on Contracts, says:

"Although it be uncertain whether the thing granted will ever exist, and it consequently cannot be *actually* in the grantor or certain, yet it is in him *potentially*, as being a thing accessory to something which he *actually* has in him. * * * Such potential property may be the subject of a contract executed, as a grant, or the like. * * * So, a tenant for life may sell the profits of his lands for three or four years to come, and yet the profits are not then *in esse.*"

It is held that a lease of land, reserving rent, and which provides that all the crops raised on the land during the term are to be the property of the lessor until the rent is paid, is valid, and will entitle the lessor to hold such crops against the creditors of the lessee. *Smith v. Atkins,* 18 Vt. 461. Justice Redfield, in delivering the opinion, said:

"It is, without doubt, true, that the sale of a thing not in existence is, upon general principles, inoperative, being merely executory,—that is, it confers no title in the thing bargained. But when the thing thereafter to be produced is the produce of land or other thing, the owner of the principal thing may retain the general property of the thing produced, unless there be fraud in the contract, and it be entered into merely to defeat creditors."

In *Jones v. Webster,* 48 Ala. 112, it is said:

"If the mortgagors had undertaken to convey the future crops they might make, without possessing any land upon which to make them, and especially without the contemplation of the immediate acquisition of some, then, certainly, their conveyance would be without operation. In this case they had the land, and the crops conveyed were to be grown upon it during their possessory interest.

The crops were an accretion or addition to the land which might very reasonably be expected to be made. They were therefore proper subjects of mortgage."

In *McCaffrey v. Woodin*, 65 N. Y. 464, it is said:

"It is well settled that a grant of the future produce of land actually in possession of the grantor at the time of the grant passes an interest in such future crop as soon as it comes into existence."

It was held in *Andrew v. Newcomb*, 32 N. Y. 417, Chief Justice Denio rendering the opinion, that crops to be raised by the owner of the land are an exception to the general rule that the "title to property not in existence cannot be affected so as to vest the title when it comes into being;" and that "the owner of land may lawfully contract for its cultivation, and may provide in whom the ownership of the product shall vest."

In *Watkins v. Wyatt*, 68 Tenn. 250, Wyatt agreed to furnish one McCain with supplies, on condition that McCain, who was a farmer, should execute to him a mortgage of his cotton crop for the then current year, as security for the supplies so furnished "to enable him [McCain] to make said crop." The crop was not then sown. This case cites many of the above authorities, and others. It recognizes that there is a seeming conflict in the adjudged cases upon the subject, but sustains the validity of the mortgage. It is there said:

"The right in the proprietor of the soil to plant, cultivate, and gather his crops, to the exclusion of all others, is an absolute legal right, and an incorporeal property; and incorporeal property is as well the subject of valid sale and mortgage as any other kind of property. The mortgagor, in this case, was the proprietor of the land on which he proposed to raise the crop in controversy. The crop had a potential existence, because it was to be the natural product and expected increase of the land then owned and occupied by him."

The like contract was sustained in *Butt v. Ellett*, 19

Wall. 544. This doctrine is also sustained by the following authorities: *Arques v. Wasson*, 51 Cal. 620; *Conderman v. Smith*, 41 Barb. 404; *Van Hoozer v. Cory*, 34 Id. 9; *Senter & Co. v. Mitchell*, 16 Fed. Rep. 206. In *McKnight v. Robbins*, 5 N. J. Eq. 229, 642, the contract was in all essential features identical with the one here involved, and it was sustained by the court.

In the present case the trees were in existence at the time of the contract, and were transferred to and became the property of Schultz, the vendee, subject to a share of the crops for the years specified. The contract was executed by the plaintiffs, and operated to the great benefit of Schultz and his grantee, the defendant. This contract is one that the law ought to delight in sustaining. If it cannot be sustained, then no executed contract can be where a party furnishes seed and puts in the crop upon shares. The same reason that would defeat the right to recovery for the crop of peaches in this case would defeat the right to recover a crop of corn, wheat, or other grain, or strawberries, and other fruits of like character. The defendant purchased with notice, and the purchase price was reduced on account of the plaintiffs' rights in the crop. We think that, under the authorities above cited, as well as in reason and justice, plaintiffs and Schultz became tenants in common of the peaches for the years which plaintiffs should select, and that defendant, having purchased with notice, stood in the same relation to plaintiffs that did his grantor.

Defendant's counsel cite *Bates v. Smith*, 83 Mich. 347, and insist that it controls this case in their favor. The language of that case is broad, and, if strictly followed, would seem to include the present one; but we think the authorities above cited clearly distinguish the natural products of the soil, wool from sheep, milk from cows, and the like, from the case that was then under consideration, and

we are disposed to follow them. The language of that case must be construed in connection with its facts.

Judgment affirmed.

The other Justices concurred.