In re DRAG et al.

Petition of HOLMES & KELSEY CO.

(District Court, E. D. Michigan, N. D.   October, 1918.)

No. 441.

1. CHATTEL MORTGAGES ⟨⟫235—SETTLEMENT—DISCHARGE.
    Whether the giving of a second chattel mortgage was accompanied by such a settlement of the previously existing indebtedness as to constitute payment thereof, and discharge the first, *held* a question of fact, to be determined in the light of all the circumstances surrounding the transactions and showing the intention of the parties.

2. CHATTEL MORTGAGES ⟨⟫124—AFTER-ACQUIRED PROPERTY—INCLUSION.
    It is the rule in Michigan that a chattel mortgage does not include after-acquired property, unless a provision to that effect is expressly included in its terms, or unless the property to which it is added is so mingled with it as not to be readily distinguishable therefrom, so, where the first mortgage including after-acquired property was discharged, such property was not embraced within the second mortgages as they did not expressly include the same.

3. CHATTEL MORTGAGES ⟨⟫101—CONSTRUCTION—STATUTES APPLICABLE.
    A chattel mortgage having been executed and performed within the state of Michigan, a bankruptcy court, in determining rights thereunder, will follow the decisions of the court of that state concerning the construction and effect of the instrument.

4. BANKRUPTCY ⟨⟫293(4)—JURISDICTION.
    Where a creditor, who claimed under its chattel mortgage exemptions to which the bankrupts were entitled out of the firm property, consented that the bankruptcy court might take possession of the property pending determination of its rights, *held* that, the bankruptcy court having properly acquired jurisdiction over such property, it might retain the same in order to determine the rights of the claimants.

5. BANKRUPTCY ⟨⟫293(4)—JURISDICTION—CONSENT.
    Where a creditor voluntarily submitted its claim to property to the jurisdiction of the bankruptcy court, and not only agreed that the referee might determine its right to the proceeds of the sale of the property, but voluntarily appeared and participated in the hearing before the referee, *held*, that it could not thereafter urge that the referee was without jurisdiction.

In Bankruptcy. In the matter of the bankruptcy of Ole Drag and Jacob Svang, doing business as copartners under the firm name of Drag & Svang. Petition by the Holmes & Kelsey Company for review of an order of the referee denying the right of petitioner to enforce a chattel mortgage against the exemptions of the bankrupts. Order affirmed.

I. S. Canfield, of Alpena, Mich., for petitioner.
L. G. Dafoe, of Alpena, Mich., for bankrupts.

TUTTLE, District Judge. This is a petition for review of an order of one of the referees in bankruptcy denying the right of the petitioner, the Holmes & Kelsey Company, which is one of the creditors of the bankruptcy partnership, to enforce a chattel mortgage

⟨⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

against the exemptions of the bankrupts, now in the custody of the bankruptcy court.

In 1900 a partnership by the name of Ole Drag & Co., the predecessor in interest of the bankrupts, gave to the petitioner a chattel mortgage for $700, covering the stock of merchandise and fixtures then in its store, and also after-acquired additions to such stock, to secure an existing indebtedness of about $250 and future advances of about $450. In 1901 the mortgagor sold its business to the bankrupts, partners trading under the name of Drag & Svang, who took over the stock mentioned, subject to said chattel mortgage, which they assumed. In 1902 a settlement was made between the bankrupts and petitioner, and a new note was executed for $800, representing the indebtedness then existing from bankrupts to petitioner, and a new chattel mortgage was given to secure such indebtedness. This mortgage covered the stock of goods and merchandise then owned by the mortgagor, but did not cover any after-acquired property, except future book accounts. Two years later another settlement was made between the parties and a bill of sale covering the stock of merchandise then owned by the bankrupts was given to the petitioner for the purpose of securing its indebtedness to the latter, which had then increased to the sum of $2,800. While this instrument was in form a bill of sale, it was in fact and in law a chattel mortgage. This mortgage did not cover any after-acquired property. During the next five years the bankrupts continued to purchase goods from the petitioner, making payments from time to time.

In 1909 a voluntary petition in bankruptcy was filed. Shortly prior to the filing of such petition in bankruptcy the petitioner herein commenced replevin proceedings in one of the state courts in the city of Alpena, where both it and the bankrupts were located, to obtain possession of the stock of goods then owned by the bankrupts, which petitioner claimed under its mortgages. Soon afterwards it consented that the bankruptcy court might take possession of these goods pending the determination of its rights therein. It is conceded that, as none of the mortgages were renewed as required by law, any rights of the mortgagees thereunder are limited to the bankrupts' statutory exemptions. The petitioner then expressed its willingness to have the property thus claimed sold with the assets of the bankrupt estate at the bankruptcy sale, with the understanding that the proceeds would be paid to the person found to be entitled thereto. On the day of the sale, and just prior thereto counsel for the petitioner filed a formal objection to the sale, which stated no grounds for such objection, and which was promptly overruled by the referee as being made too late, in view of the expenses incurred and the arrangements made for such sale in reliance upon the consent of the petitioner previously given. The sale was thereupon made, and the proceeds of the exemptions retained by the referee, pending a decision on the conflicting claims of petitioner and the bankrupts. Both parties consented to have the referee determine these claims, and testimony and arguments in support of the respective claims were submitted. The referee entered an order denying petitioner any rights in these exemptions or in their proceeds. The referee found that the first mort-

gage had been superseded by those given subsequently, that all of the merchandise belonging to the bankrupts at the time of the bankruptcy had been acquired after the giving of the last of said mortgages, and that there was no property then in existence subject to said mortgage. To review this ruling the present petition was filed.

[1] Whether the giving of the second and third chattel mortgage was accompanied by such a settlement of the previously existing indebtedness as to constitute a payment thereof, with the consequent discharge of the chattel mortgage given to secure such indebtedness, was a question of fact to be determined in the light of all the circumstances surrounding the transactions and showing the intention of the parties. Cadwell v. Pray, 41 Mich. 307, 2 N. W. 52; Brown v. Dunckel, 46 Mich. 29, 8 N. W. 537.

A careful examination of the record satisfies me that there was sufficient evidence to justify the finding of the referee to the effect that each mortgage was intended to secure a new indebtedness, supplanting the one previously existing. Each transaction constituted a settlement of the previous account between the parties. Hence the first mortgage, which was the only one covering after-acquired merchandise, was superseded and rendered inoperative by the giving of the subsequent mortgages.

[2] It is undisputed that at the time of the commencement of these proceedings none of the property located in the store of the bankrupts at the time of the execution of the last mortgage and covered by such mortgage was still in existence and owned by the bankrupts. As, therefore, the latter mortgage did not embrace any property to be acquired after the date of its execution, there was no property in possession of the bankrupts in 1909 subject to this mortgage. It is a well-settled rule in Michigan that such a mortgage does not cover after-acquired property, unless a provision to that effect is expressly included in its terms, or unless the property to which it is added is so mingled with it as not to be readily distinguishable therefrom. Fowler v. Hoffman, 31 Mich. 215; Dickey v. Waldo, 97 Mich. 255, 56 N. W. 608, 23 L. R. A. 449.

[3] This chattel mortgage having been executed and performed within the state of Michigan, this court will follow the decisions of the courts of that state concerning the construction and effect of such an instrument. Bryant v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; Title Guaranty & Surety Co. v. Witmire, 195 Fed. 41, 115 C. C. A. 43 (C. C. A. 6). There was, therefore, no error in the ruling of the referee with respect to the matter just considered, and the contentions to the contrary must be overruled.

[4] It is further urged by the petitioner that the referee was without jurisdiction to determine the conflicting claims to this exempt property, on the ground that the power of the bankruptcy court is limited to the setting aside for the bankrupts of their exemptions. It will be noted that this exempt property came into the possession of the bankruptcy court with the consent of the petitioner. It would seem, therefore, that, having acquired jurisdiction over such property, the bankruptcy court might properly retain such jurisdiction

in order to determine the rights of these adverse claimants thereto. Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Lucius v. Cawthon-Coleman Co., 196 U. S. 149, 25 Sup. Ct. 214, 49 L. Ed. 425; In re National Grocer Co., 181 Fed. 34, 104 C. C. A. 47, 30 L. R. A. (N. S.) 982 (C. C. A. 6).

[5] Aside, however, from this question, the record clearly shows that the petitioner also voluntarily submitted its claims to this property to the jurisdiction of the bankruptcy court. It not only agreed that the referee might determine its rights to the proceeds of the sale thereof, but it voluntarily appeared and participated in the hearing before the referee concerning this very dispute between it and the bankrupts. It failed to raise the question of jurisdiction until after the decision of the referee adverse to it, and by its actions and language plainly indicated its consent to such jurisdiction. It therefore manifestly waived the right to afterwards urge such objection.

For the reasons stated, the order of the referee is affirmed.