[Civ. No. 2005.   Third Appellate District.—July 28, 1919.]

ROTH HAMILTON, Surviving Partner, etc., Appellant, v. W. A. KLINKE et al., Respondents.

[1] SALES—CROPS TO BE GROWN.—Crops to be grown may be the subject of sale.

[2] ID.—AGREEMENT CONFIRMING SALE OF BEANS NOT PLANTED—CONSTRUCTION OF CONTRACT.—An agreement confirming the sale of a crop of beans to be subsequently planted and grown which recites that "it is mutually understood that this contract . . . constitutes an absolute sale," and, further, that until a bill of lading or warehouse receipt "covering the beans" is received by the vendee, the vendor agrees to assume "all risk of loss or damage to said beans," constitutes a sale and not an agreement to sell.

[3] ID.—DELIVERY AND PAYMENT OF CONSIDERATION.—As between the parties, a sale may be completed without either delivery or payment of the consideration.

APPEAL from a judgment of the Superior Court of Stanislaus County. W. H. Langdon, Judge. Reversed.

The facts are stated in the opinion of the court.

Hawkins & Hawkins for Appellant.

Hatton & Scott for Respondents.

CHIPMAN, P. J.—The action is in claim and delivery arising out of the contract of purchase and sale set forth in the complaint as follows:

---

1. Sale of future crops, notes, 23 L. R. A. 449; L. R. A. 1917C, 8.

"Ceres, Cal., R. D. A. Box 393.
                                    "3/3, 1917.

"Hamilton & Menderson,
    "Los Angeles, California.

"Gentlemen: This contract confirms sale to you this day of our/my entire 1917 crop of choice recleaned Black Eye beans from 30 acres on own Ranch in Stanislaus County, about 5 miles So of Ceres, less none of the crop which is reserved for rental, and less —— sacks reserved for seed, at five cents per pound net weight, F. O. B. cars or warehouse Ceres. We/I estimate the quantity hereby sold to be 600 sacks (at 80 lbs. each), and agree to deliver all of said beans in good marketable condition and free from damage, on or before October 30, 1917, in good new bean sacks, you to pay us/me cash for said beans on receipt of shipping documents. If not delivered within the specified time you may accept or reject the beans at your option. We/I hereby guarantee that the said crop of beans is our/me sole and absolute property and free from all encumbrance except as specified herein. Should the above estimate be exceeded by more than ten per cent of same, you may accept or reject at your option all in excess of the original estimate plus ten per cent thereof. If we/I fail to deliver the beans as herein provided, unless non-delivery results from crop failure or other cause beyond our/my control, we/I will pay you the difference between the price herein fixed and the market price of such beans on th../last day specified for delivery.

"It is mutually understood that this contract, which is signed in duplicate by both parties hereto, constitutes an absolute sale, but until you receive bill of lading or negotiable warehouse receipt covering the beans, we/I agree to and to assume all risks of loss or damage to said beans.

                         "Yours truly,
                                "W. A. KLINKE,
                         "Of —— Postoffice.

"W. A. Klinke,
    "Ceres.

"We confirm purchase of beans in accordance with the foregoing contract.

                         "HAMILTON & MENDERSON,
                              "By R. L. BROWN."

It is alleged that defendant, W. A. Klinke, grew on the premises mentioned in said contract in 1917 certain four hundred sacks of Black Eye beans, weighing thirty-one thousand pounds, being the same beans mentioned in said contract; that on October 31, 1917, said beans were of the value of $.08 per pound; that said Klinke did not deliver said beans on said date, or at all, although plaintiff demanded delivery and "said defendants do still fail and refuse to deliver such beans or any part thereof"; that defendant Hatton claims an interest in said beans by virtue of a certain chattel mortgage; that by the terms of said contract plaintiff is entitled to the possession and was so entitled at the commencement of the action, but that defendants "both of whom have possession of said beans refused and still refuse to deliver possession of said beans to plaintiff"; that on November 3, 1917, plaintiff demanded of defendants, and each of them, possession of said property, but defendants, and each of them, refused to deliver the same to plaintiff and still refuse to deliver said beans.

The complaint was filed on November 3, 1917. The defendants answered and filed a counterclaim; they denied that the defendant Klinke sold to the copartnership of Hamilton & Menderson said Klinke's crop of beans, but do not deny the execution of the before-mentioned contract and allege there was no consideration for the said alleged written contract; deny that said Klinke grew on any ranch belonging to him in the year 1917 any beans whatever; they deny that the said beans were of the quantity and value alleged, but do not allege any value; deny that plaintiff demanded delivery of said beans as alleged in the complaint; "deny that both of said defendants have possession of said beans belonging to plaintiff and to the possession of which plaintiff is entitled"; deny that on November 3d, or at any other time, plaintiff demanded of defendants "delivery to plaintiff of any beans belonging to plaintiff"; and deny that they or either of them refused to deliver to plaintiff any beans belonging to him.

Further answering said complaint, it is alleged "that on March 3, 1917, defendant Klinke and his wife were and ever since have been the owners as tenants in common of a certain forty-acre tract of land [describing the same]"; that about June 1st, they planted "beans on about thirty-nine acres of said above described land" prior to which

date no beans had been planted thereon; that they there-
after jointly cared for, cultivated and harvested the same
and each of said parties is the owner of an undivided one-
half interest in said crop of beans; it is then alleged that
on October 18, 1917, the said Klinke and his wife executed
and delivered to defendant Hatton their promissory note
for $750, secured by a chattel mortgage on said beans;
that about November 2, 1917, a part of said beans, to wit,
294 sacks, were stored in a certain designated warehouse
in the town of Modesto and were so stored in the name of
defendant Hatton, as mortgagee; the commencement of the
present action is then alleged and that on the affidavit
filed therein were written instructions to the sheriff to
take possession of certain beans, being the same beans re-
ferred to in said warehouse; that in pursuance of said
order, the sheriff took possession of 294 sacks; that the pa-
pers in the said action were served upon the defendants on
or about November 7, 1917; that on November 12, 1917,
defendants Klinke and Hatton executed and delivered to the
sheriff an undertaking for the delivery to defendants of
said 294 sacks of said beans, together with a written de-
mand for a return to defendants of the same; that said
sheriff "has failed and refused to deliver to said defendants,
or either of them, said 294 sacks of beans or any part
thereof"; that at the time of the taking of said beans they
were in the rightful and lawful possession of the defendants;
they allege the value of said beans to be the market price
of said beans, being $.08¾ per pound, and they pray for
judgment for the recovery of the possession of said beans
or their value thereof.

For further defense defendants set up substantially the
foregoing facts by way of counterclaim. Plaintiff answered
the counterclaim by denials and admissions which we do
not deem it necessary to set forth; Geneva R. L. Klinke
filed a complaint by way of intervention by leave of the
court, in which she set forth her interest in the beans sub-
stantially as set forth in the answer of defendants; the
pleadings are verified.

The action was tried by the court without a jury and
findings of fact and judgment were in favor of the defend-
ants. The judgment directed that the defendants and inter-
vener recover the said beans and the possession thereof, and

in case delivery cannot be had that they have judgment for the sum of $2,129.40, the value of said beans, and costs of the action. The appeal is on the judgment-roll alone.

Appellant makes three points: I. The judgment is not supported by the findings; II. The court failed to find on a material fact; III. The findings are inconsistent.

By finding II the court found that the said copartnership W. A. Klinke made the contract set forth in the complaint. Finding III is "that said defendant, W. A. Klinke, did not sell any beans whatever to said Hamilton and Menderson by the written contract set forth in finding II herein." Finding IV is "that there never was any consideration whatever for the execution by said defendant W. A. Klinke, of said written contract set forth in finding II," and "that neither of the defendants received any consideration in connection with the execution of said contract." Finding VI is that prior to the commencement of the action said Klinke did not at any time sell to said copartnership any beans for any purchase price whatever. Finding XI is that the beans were planted in June and afterward harvested, and Finding XIII is that they were stored in the warehouse on November 2, 1917.

Concededly these findings were made and are now defended by respondents upon the assumption that inasmuch as the contract was made March 3, 1917, and no beans were planted by defendant Klinke until June 1, 1917, as found by the court, the subject of the sale (the beans) had no existence when the contract was entered into and there was, therefore, no sale.

The argument of respondents is based upon the code provisions as follows: "Sale is a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property." (Civ. Code, sec. 1721.) Says the brief: "The definition of sale above given uses the word 'transfers' and does not use the words 'agrees to transfer.'" Again quoting from the code: "Transfer is an act of the parties, or of the law, by which the title to property is conveyed from one living person to another." (Civ. Code, sec. 1039.) The brief proceeds: "We submit that if property does not exist, title to said property does not exist, and, therefore, that there cannot be a transfer of title to nonexistent property." Again resorting to the code: "The

subject of sale must be property, the title to which can be immediately transferred from the seller to the buyer." (Civ. Code, sec. 1722.) Says the brief: "Title to property which has no existence cannot be immediately transferred." Respondents quote section 1730, which reads: "Any property which, if in existence, might be the subject of sale, may be the subject of an agreement for sale, whether in existence or not," as to which the brief says: "above section needs no comment." [1] It seems to us that this section should not be thus summarily disposed of. In note to this section, Kerr's Cyclopedic Civil Code, under the heading "Crops to be grown may be subject of sale," we find cited: *Argues* v. *Wasson,* 51 Cal. 620, [21 Am. Rep. 718]; *Callender* v. *McLeod,* 74 Cal. 376, 379, [16 Pac. 194]; *Brown* v. *Anderson,* 77 Cal. 236, [19 Pac. 487]; *Shoemaker* v. *Acker,* 116 Cal. 239, [48 Pac. 62]; *Lemon* v. *Wolf,* 121 Cal. 272, [53 Pac. 801].

Said the court in *Lemon* v. *Wolf, supra*: "Whether a chattel mortgage upon a crop yet to be planted is valid is a question which has not received a uniform decision. (See Pingree on Chattel Mortgages, sec. 217 et seq.) Whatever may be the law in other states, the right to make a chattel mortgage upon crops to be raised before the same have been planted was affirmed in *Argues* v. *Wasson,* 51 Cal. 620, [21 Am. Rep. 718], and has become an established rule of property in this state." In *Shoemaker* v. *Acker,* 116 Cal. 239, 245, [48 Pac. 62, 64], the court said: "Contracts for the purchase and sale of future crops running through a series of years have been recognized as valid (Civ. Code, § 1768; *Blackwood* v. *Cutting Packing Co.,* 76 Cal. 212, [9 Am. St. Rep. 199, 18 Pac. 248]; *Brown* v. *Anderson,* 77 Cal. 236, [19 Pac. 487]); and actions have frequently been maintained for damages for the destruction of growing crops, although, of course, there was no absolute certainty that they would have matured. (Sutherland on Damages, sec. 120, and cases cited.)" Section 1768 of the Civil Code seems to contemplate the sale of merchandise not in existence. And in *Blackwood* v. *Cutting Packing Co., supra,* the court said: "Future crops of fruit come under the head of merchandise not then in existence." So, also, we think, would beans. Respondents contend that the contract was an agreement to sell and does not import a sale

and hence title did not pass. Relying, we assume, upon the fundamental difference between a sale, properly so called, and an agreement to sell, which is that in the former the title passes, while in the latter case it does not, respondents cite *Blackwood* v. *Cutting Packing Co.*, quoting from Benjamin on Sales, as follows: "Where by the agreement the vendor is to do anything to the goods for the purpose of putting them in that state into which the purchaser is to be bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of these things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property."

In considering the contract in that case the court said: "It seems well settled that the question as to whether the title has passed is one as to the intention of the parties. And such intention is, as a matter of course, to be gathered from the language of the parties, considered in the light of all the circumstances." The court found that there were certain enumerated things to be done connected with the contract which had a controlling force indicating that it was not intended to mean a sale.

[2] In the present case we cannot discover that Klinke was to do anything which he would not naturally or ordinarily be required to do in case of a sale. Besides, to make his intention unmistakable the following was made part of the contract: "It is mutually understood that this contract, . . . constitutes an absolute sale"; and until a bill of lading or warehouse receipt "covering the beans" is received by the vendee, Klinke, the vendor agrees to assume "all risks of loss or damage to said beans." As to this latter provision as bearing upon the question appellant says in his brief: "In the *Elgee Cotton Cases*, 22 Wall. (U. S.) 180, [22 L. Ed. 863, see, also, Rose's U. S. Notes], the courts say in discussing the case of *Martineau* v. *Kitching*, L. R. 7 Q. B. 436: 'There it was stipulated that the goods should remain at the risk of the sellers, and Lord Cockburn asked, "If the property in the goods had not passed to the buyers, why was it said the goods should remain at the risk of the seller?" adding further, "what would be the necessity, what would be the object and purpose of such a stipulation if the property still remained in them? Of course it

would be at their risk." ' " So here, we may ask, why did Klinke "assume all risks of loss or damage to said beans" if it was not intended that the title passed to the vendee?

In the case of *Dickey* v. *Waldo*, 97 Mich. 255, [23 L. R. A. 449, 56 N. W. 608], the question was whether or not a crop not in being was the subject of a sale. In the course of an exhaustive opinion the case of *Argues* v. *Wasson*, 51 Cal. 620, [21 Am. Rep. 718], was cited and the court said: "In a legal sense things are said to have a potential existence when they are the natural product or expected increase of something already belonging to the vendor. When one possesses a thing from which a certain product, in the very nature of things, may be expected, such product, we think, has a potential existence. The following rule seems to be well established by reason and authority, viz., that while one owns property from which products naturally arise, such product may be the subject of sale and mortgage."

[3] As between the parties a sale may be completed without either delivery or payment of the consideration. That a sale may be consummated without delivery was decided in *Johnson* v. *Dixon Farms Co.*, 29 Cal. App. 52, [155 Pac. 134, 136]. Section 1721 of the Civil Code provides: "Sale is a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property." It was said in *Borland* v. *Nevada Bank*, 99 Cal. 89, 93, [37 Am. St. Rep. 32, 33 Pac. 737, 738]: "It is, however, the agreement to pay a price, rather than the actual payment of the price, which is the essential element of a sale."

Some other questions are presented, but it seems to us that the foregoing is the basic question involved and on its correct solution the judgment must stand or fall. If, as we think is true, a sale was intended, plaintiff succeeded to Klinke's interest as cotenant with the latter's wife, subject to Hatton's lien as mortgagee of the interest of both Klinke and wife. In the adjustment of the property rights of the parties, plaintiff's interest should have been considered, whereas by the findings and judgment of the court it was determined that plaintiff has no interest whatever in the property.

The court found that the beans in question were grown upon a tract of land owned by Klinke and wife as tenants in common and that the beans were the result of their joint

effort and were owned by them jointly, each one-half thereof, and that the beans were grown ''on about thirty-nine acres'' of a certain forty-acre tract of land of which, as we understand, it is not disputed, the thirty acres referred to in said contract as Klinke's ''own ranch'' was a part; that the beans grown on this land were stored in the name of mortgagee Hatton and when taken by plaintiff were in the possession of Hatton and Klinke and wife. Whether or not the call in the contract for thirty acres would limit plaintiff's right to the beans grown on that proportion of the thirty-nine acres, the fact that the 294 sacks included beans harvested from the entire tract, including this thirty acres, should not, it seems to us, deprive plaintiff of the right, at least, to the possession of Klinke's interest in the beans grown on thirty acres of the land, as tenant in common with mortgagee Hatton and Klinke.

The point that the findings are inconsistent must be held well taken if, as we hold, there was a sale. Finding II is that the contract sued upon was entered into and finding III is that defendant Klinke did not sell any beans to Hamilton & Menderson by that contract, and finding VI is to like effect, while finding IV is that there was no consideration for the execution of the contract. Findings II and III are not only inconsistent but repugnant. Findings II and IV are inconsistent, as we have seen there was a consideration and the contract shows that the consideration for the promise was a ''good consideration'' under the definition given in section 1605 of the Civil Code.

It is not necessary to consider appellant's second point that the court failed to find upon material facts.

Because of what we deem to have been an erroneous meaning given to the contract in question by the court, the judgment must be reversed, and it is so ordered.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 27, 1919; and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 25, 1919.

All the Justices concurred.