*124 OPINION.
Phillips:
During the year 1919 taxpayer entered into contracts-for the purchase of coffee. On December 31, 1919, a portion of each of these contracts remained undelivered. The market price of the coffee at that time was less than the cost and taxpayer set up on its books as a loss, and deducted in its income-tax returns as a loss, the difference between the contract price and the market price on December 31, 1919. In 1920 taxpayer entered into contracts for the purchase of canned goods, prunes, and raisins, a portion of each of which was undelivered on December 31, 1920, and similar entries were made on its books and claimed in its tax return for that year.
Taxpayer claims that title to such goods had passed to it on December 31 of the respective years; that such goods should, therefore, have been included in its closing inventories for such years at the market price, which was lower than cost, and the contract price should have been set up as an account payable. It is taxpayer’s contention that the entries made upon its books accomplished the same results.
Section 203 of the Revenue Act of 1918 provides:
That whenever in the opinion of the Commissioner the -use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.
Pursuant to such provision of law the Commissioner adopted regulations providing for the valuation of inventories at (a) cost, or (b) cost or market, whichever is lower. The taxpayer valued its inventories upon the second basis. The Commissioner further provided in his regulations (Regulations 45, art. 1581, as amended March 3, 1922, by T. D. 3296) :
A purchaser should include in inventory merchandise purchased, title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery transfer of title to which had not yet been effected.
Assuming, as we shall, that such regulations are reasonable and within the scope of the authority vested in the Commissioner, the sole question for determination in this appeal is whether title to the property covered by the contracts had passed to the taxpayer on *125 December 31 of the respective years. Each of the contracts was closed in California and is governed by the laws of that State.
Section 1140 of the California Civil Code provides:
Transfer of title under sale: The title to personal property, sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, whether it is separated from other things or not.
This section has been the subject of interpretation by the California courts in several cases. In Hamilton v. Klinke, 42 Cal. App. 426, 183 Pac. 675, and in Jones v. California Growers & Shippers, Inc., 182 Cal. 777, 190 Pac. 172, it was held that contracts of sale of crops growing or to be grown upon certain identified property passed title to the purchaser. In Blackwood v. Cutting Packing Co., 76 Cal. 212, 18 Pac. 248, however, a somewhat different situation existed and a different result was reached. In that case the agreement between the parties was witnessed by an instrument signed by the defendant reading:
Sold Cutting Packing Company my crop of apricots, at Haywards, for the seasons of 1882-83-84-85-86, not less than -75 tons, and not exceeding 200 tons, per annum, at 3 cents per pound, f. o. b. Haywards.
The only question before the court was whether or not title had passed prior to delivery of the crop. The court, in the course of its opinion, says:
The portion of the crop to be delivered had not been identified. What was contracted for was to be “ not JSss than 75 tons, and not exceeding 200 tons per annum.” Possibly it might be argued that, if any crop should turn out to be less than 75 tons, the buyer would not be bound to accept any portion of it. It is not necessary to consider that question. It certainly cannot be maintained that the same result would follow if the crop of any year should turn out to be more than 200 tons. At the time of the formation of the contract (to which the inquiry must relate) it could not be known what number of tons would be produced.
After quoting section 1140 of the Civil Code, the court goes on to say:
This section does not dispense with identification. On the contrary, it requires it. It only dispenses with segregation when the property is otherwise identified. Therefore, where the identification consists in the segregation, weighing or measuring, they are still necessary. And the present case was of the latter character. As against these controlling features of the transaction, the plaintiff has only the language of the instrument. The term “ sold,” it is said, indicates a consummated sale. But this word is not conclusive.
The court holds that in the case before it there was only a contract to sell and not a sale.
It is a recognized principle of law that no title passes unless the goods which are the subject of the sale have been identified either as the specific goods sold or as part of a specified mass of like goods. *126 The section of the Civil Code upon which taxpayer relies requires identification of the thing sold, although it does not require separation from other things. The rule is laid down in 35 Cyc. 291, as follows:
The subject-matter of the sale may be goods or articles which, although in existence at the date of the contract, have not been identified as the particular goods sold. In such case the contract is executory and the property in the goods does not pass until the goods have been identified and appropriated to the contract.
And in 35 Cyc. 295, the statement is made:
The contract of sale may relate to goods of a particular description but not part of a specific mass, as when goods are ordered from a dealer. Under such contracts the property in the goods does not pass to the buyer until there has been appropriation of specific goods to the contract.
Substantially the same rule is laid down in 24 B,. C. L. 23. section 285.
In the case of the coffee contracts entered into by the taxpayer in November, 1919, it appears that these contracts were made with four different sellers and provided for the delivery of coffee to be shipped from source by steamer or steamers to San Francisco during November or December, 1919. The only description of the coffee sold was by grade. It is not described as coffee in a particular warehouse or on a particular steamer. When the coffee which was delivered in January, 1920, was shipped, it was not consigned to the taxpayer, but to the respective sellers, and there is nothing in the testimony to show that there was, prior to December 31, 1919, any appropriation of any particular coffee, or of a portion of any particular shipment, to the fulfillment of taxpayer’s contract. It is conceivable, and indeed quite probable, that at least one of the sellers may at that date have had two or more shipments on the high seas bound for San Francisco, from either of which he could have fulfilled his obligations to the taxpayer. Until there was some identification of the coffee covered by such contracts, which would enable taxpayer to claim it as its property, no title could pass.
With respect to the contract for the purchase of prunes, taxpayer claims there was a present sale of growing crops. The California Prune & Apricot Growers, Inc., with which the contract was made, was a cooperative organization having contracts with 11,000 growers for their crops of prunes. Under the doctrine laid down by the California courts in Hamilton v. Klinke and Jones v. California Growers & Shippers, Inc., supra, it would seem to follow that title to such crops had passed to the California Prune & Apricot Growers, Inc., at the time of its contract with taxpayer. Taxpayer’s contract, however, did not call for the prunes to be raised on any designated land or for any portion thereof. The seller was at liberty to *127 fulfill the contract with prunes grown upon any or all of the 11,000 ranches. It seems clear that, at the time the contract was made, at least, no title passed to the taxpayer. Blackwood v. Cutting Packing Co., supra. Nor do we believe that title passed-when the prunes came into the hands of the seller, for there does not appear at any time to have been any identification of taxpayer’s goods, either as a separate mass or as a part of any designated mass. It is true that different qualities and sizes were separated into different bins in the warehouse of the seller and that the seller had on hand on December 31, 1920, sufficient prunes to fill all its contracts. Such prunes, however, were stored in the various warehouses of the seller and delivery might have been made from any of these various warehouses. Assume, for example, that one of the warehouses had been destroyed. Would it have been possible for either the taxpayer or the California Prune & Apricot Growers, Inc., to have successfully contended that the prunes destroyed by fire were the property of the taxpayer or that a certain percentage of them belonged to the taxpayer? In the absence of any sufficient identification, it can not be said that title has passed.
The same situation existed with reference to the canned goods purchased under the contracts with the California Packing Corporation and remaining undelivered on December 31, 1920. It further appears that the seller required taxpayer to pay storage and insurance on the canned goods after December 1, 1920. There is nothing, however, to show that the California Packing Corporation at any time actually set aside the goods to be delivered to the taxpayer or even designated the place at which these goods were stored. The storage and insurance charges appear to be in the nature of damages imposed upon the taxpayer for its failure to take the goods in accordance with its contracts. There is an absence of any proof that the insurance charged to the taxpayer was placed with the insurance companies upon any particular goods, or upon a portion of any particular goods.
So far as the raisin contracts are concerned, it is sufficient to say that the only proof was that the contract was made, that the raisins were not delivered, and that the market price on December 31, 1920, was less than the contract price. It does .not appear that the California Associated Raisin Co. had on hand on December 31, 1920, sufficient raisins to fulfill the contract, but, even though we should assume that such was the case, there is an utter absence of any proof of identification of the properties sold, except by a description of the grade, variety, and crop to be delivered.
The loss claimed by the taxpayer can not be sustained on the ' ground that title passed. This being so, the entry made by the tax *128 payer was no more than a reserve for anticipated losses, which this Board has decided can not be allowed as a deduction. Appeal of Morrison-Ricker Mfg. Co., 2 B. T. A. 1008.